**In the Matter of the ADOPTION OF C.M.G., a minor.**

**R.J.G. and B.G., Appellants,**

v.

**M.J.M., Appellee.**

No. 930464–CA.

Court of Appeals of Utah.

Feb. 16, 1994.

Stephen W. Farr (argued), Farr, Kaufman, Sullivan, Forman, Jensen, Medsker & Perkins, Ogden, for appellants.

Emilie A. Bean (argued), Bean & Smedley, Layton, for appellee.

Before DAVIS, JACKSON, and ORME, JJ.

## OPINION

DAVIS, Judge:

Petitioners, R.J.G. (Mother) and her father, B.G. (Grandfather) appeal a final order dismissing their petition to allow Grandfather to adopt Mother's minor child, C.M.G. (Child) over the objection of appellee M.J.M. (Father). We affirm.

## FACTS

The parties raise only issues of law and do not dispute the facts as found by the court. Accordingly, we draw the facts from the court's findings.

Mother, an unmarried woman, gave birth to Child on August 27, 1989. On October 11, 1991, the Office of Recovery Services (ORS), based on information provided by Mother, filed a paternity action naming as defendants Father and Mother. The paternity action named Father as Child's biological father and sought current and back child support. Later, on December 1, 1992, Mother and Grandfather petitioned to adopt Child. At the time the adoption petition was filed, Father had not yet filed an acknowledgment of paternity with the Utah State Bureau of Vital Statistics. Still, Mother has continually claimed that Father is Child's biological father.

The adoption petition alleged that there was a collateral ORS proceeding, that Father had initially denied paternity, that Mother wished to sustain her relationship as natural parent of Child, that Mother and Child reside at Grandfather's residence, and that Grandfather sought to adopt Child and have joint

custody with Mother. Mother and Grandfather caused Father to be formally served with notice of the adoption petition and hearing. The notice stated: "If you have any objections to the proposed adoption of the above named minor child, you must be present at said hearing and make those known."[1]

Some time after the petition was filed, Father signed a stipulation and decree of paternity in the paternity action acknowledging his paternity of Child and his agreement to support her. On March 5, 1993, Father filed an acknowledgment of paternity with the Bureau of Vital Statistics. In so doing, he again acknowledged his paternity of Child and his agreement to support her. On April 5, 1993, a hearing in the paternity action was scheduled before a commissioner. The commissioner declined to proceed pending resolution of the adoption action. On April 27, 1993, Father submitted a formal written objection to the petition for adoption and termination of his parental rights.

On May 19, 1993, the court heard Father's objections and motion to dismiss the adoption petition. At this time, Child was three years old. The court dismissed the adoption petition reasoning that the paternity petition served "to put everyone involved in the adoption on notice of [Father's] potential interest in [Child]." The court noted that the registration of paternity requirement of Utah Code Ann. § 78–30–4.8 (Supp.1993) was intended "to create certainty and finality in the adoption process when there is uncertainty as to who the father is, especially when young children are involved in agency or private placement adoptions." The court distinguished such cases from the present case "where the maternal grandfather is involved as an adopting party and was clearly on notice of [Father's] interest." The court concluded that it was "in the best overall interest of the child with regard to the sanctity of the natural parent's relationship with that child to dismiss this adoption."

The court then ordered that the paternity action be completed. The court noted that in

the event tests excluded Father as Child's biological father, he would then lose standing and the adoption petition could be reinstated. Mother and Grandfather appeal.

## FATHER'S STANDING TO OBJECT

Petitioners' sole contention at trial and on appeal is that Father's failure to file his acknowledgement of paternity prior to the filing of the adoption petition results in his not having standing to object to the adoption.

The general legislative intent of Utah's adoption statute is "that in every adoption the best interest of the child should govern and be of foremost concern in the court's determination." Utah Code Ann. § 78–30–1.5 (1992). Section 78–30–4.1(4) (Supp.1993) provides that an adoption ordinarily may not go forward without consent or relinquishment from the biological father of an adoptee born outside of marriage.

Section 78–30–4.10 (1992) addresses contested hearings in the context of an adoption proceeding and provides that any person who has been served with a notice of the adoption proceeding and who wishes to contest the adoption can upon motion have a hearing to determine whether (a) the putative father is the child's biological father; (b) the best interests of the adoptee will be served by the adoption; (c) the adoptee is capable of being adopted pursuant to the adoption statute; (d) consent or relinquishment is required; or (e) consent or relinquishment is valid. *Id.*

These sections are not entirely consistent with one another or with Utah Code Ann. § 78–30–4.8 (Supp.1993), which addresses a putative father's filing requirements and effects of failure to file. A putative father of a child born out of wedlock may file a notice of paternity with the Department of Health. *Id.*

> The notice may be filed prior to the birth of the child but must be filed ... prior to the filing of a petition by a person with

1. At oral argument, counsel for Mother and Grandfather claimed that the trial court ordered that Father be served with notice of the adoption proceedings. A search of the record before this court does not reveal that counsel objected to Father being served, nor does it reveal a court order that Father be served.

whom the mother has placed the child for adoption.

Utah Code Ann. § 78–30–4.8(2).

Any putative father who fails to file his notice of paternity is barred from thereafter bringing or maintaining any action to assert any interest in the child unless he proves by clear and convincing evidence [that it was impossible to file and that he filed notice once it became possible to file].

Utah Code Ann. § 78–30–4.8(3).

The legislature stated its intent in enacting the filing requirement:

The Legislature finds that a certain degree of finality is necessary in order to facilitate the state's interest in expediting the adoption of young children and in protecting the rights and interests of the child, the birth mother, and the adoptive parents.

Utah Code Ann. § 78–30–4.8(3).

This court analyzed section 78–30–4.8 in *In re K.B.E. and T.M.E.*, 740 P.2d 292 (Utah App.1987). The facts of *K.B.E.* are similar to the present case in that K.B.E.'s natural father objected to the child being adopted by the child's natural mother and the child's maternal great grandfather. In *K.B.E.*, the petitioners filed for adoption the morning of the child's birth, and the child's father registered his paternity that afternoon. Like the present case, the child's mother was not relinquishing her parental rights and was seeking to cut off the parental rights of the child's father. *Id.* at 295.

This court determined that K.B.E.'s father had untimely filed his notice of paternity pursuant to the statute because he did not file it "prior to the filing of a petition by a person with whom the mother has placed the child for adoption," Utah Code Ann. § 78–30–4.8, although the mother had not "placed" the child anywhere. *K.B.E.* at 295. The majority noted that the statutory filing requirement "does not clearly address the situation we find here, as it contemplates either

agency adoptions or private placement with new parents." *Id.* Notwithstanding that, the majority rejected the concurring opinion's rationale that the effects of failure to timely file notice should not apply to stepparent-like adoptions. *Id.*[2] Without identifying them, the majority noted that such an analysis would be "fraught with potential pitfalls." *Id.* However, the majority determined that the filing requirement should not be applied in K.B.E.'s case because to do so would violate the father's state and federal due process rights. *Id.* at 296–97. The *K.B.E.* majority quoted approvingly from Justice Durham's dissent in *Sanchez v. L.D.S. Social Servs.*, 680 P.2d 753, 756 (Utah 1984), noting that the statute was " 'not created to encourage a "race" for placement to cut off the rights of fathers who are identified and present.' " *Id.* at 296–97 (quoting *Sanchez*, 680 P.2d at 756 (Durham, J., dissenting)).

We distinguish *K.B.E.* from the present case on factual as well as statutory grounds.

Well prior to the date Mother and Grandfather had filed their petition to adopt, Mother had cooperated with the filing of the paternity action by providing information to ORS regarding Father's paternity. Also, well before the adoption petition was filed, Father was served notice in the paternity action. Thus, all parties were on notice that the issue of Father's rights and responsibilities had been raised and would be resolved in that action. Also, Mother and Grandfather had served Father with notice of the pending adoption hearing. In short, Mother had implicated Father in two actions directly involving his paternity of Child.

Father, having received notice of the hearing on the adoption petition, was entitled to a hearing pursuant to section 78–30–4.10(1) because he had "been served with a notice of the adoption proceeding" and he "wishe[d] to contest the adoption." Finally, the court assumed, based on the parties' representations and Father's stipulation, that Father may be

---

2. The concurring opinion in *K.B.E.* limited the effect of failure to file notice of paternity prior to the filing of a petition to adopt to circumstances where the child had been "given up for adoption by the mother either to a licensed agency or to a third person." *K.B.E.*, 740 P.2d at 298. We

believe this analysis is sound and would be dispositive of the present case. However, our understanding of *State v. Thurman*, 846 P.2d 1256, 1269 (Utah 1993) is that the doctrine of stare decisis binds us to the majority opinion of *K.B.E.*

the child's biological father and thus "he may proceed with a hearing to contest the adoption under this section." Utah Code Ann. § 78-30-4.10(1)(a). Thus the court correctly determined that Father had standing to object to the petition.

Neither do we find error in the court's dismissal of the petition. Once apprised of the trial court's determination that Father had standing, petitioners did not amend their petition to seek a determination that Father's consent was unnecessary under section 78-30-5. The court essentially determined that Child was not capable of being adopted because consent or relinquishment would be required and could not be obtained. *See* Utah Code Ann. § 78-30-4.10(1)(a), (c) & (d) (1992).[3]

We recognize that an unwed father's " 'interest in personal contact with his child acquires substantial protection under the Due Process Clause' " when the father " 'demonstrates a full commitment to the responsibilities of parenthood' " by coming forward to participate in the rearing of his child. *K.B.E.*, 740 P.2d at 297 (quoting *Lehr v. Robertson*, 463 U.S. 248, 262, 103 S.Ct. 2985, 2993, 77 L.Ed.2d 614 (1983)). We need not reach state or federal constitutional issues in this case, however, because Mother, one of the petitioners, had implicated Father in a paternity action involving Child, and because Father had been duly notified and had appeared. Thus, Father had standing pursuant to Utah Code Ann. § 78-30-4.10(1).

We therefore affirm the trial court's dismissal of the petition.

JACKSON and ORME, JJ., concur.

---

3. This case is similar to *K.B.E.* in that dismissal of the adoption petition is in the best interest of the child because Father will be required to financially support Child, he will be able to develop a parental relationship with Child, and Child's present living arrangements will not change. *See* Utah Code Ann. § 78-30-4.10(1)(b); *K.B.E.*, 740 P.2d at 296. This situation has the potential of benefiting, not harming, Child. *Id.*