2001 UT App 183

**In the matter of the ADOPTION OF S.L.F., a minor.**

**T.S., Appellee,**

v.

**L.F., P.P., and S.L.F., Appellants.**

**No. 990750–CA.**

Court of Appeals of Utah.

June 7, 2001.

---

Kathleen M. McConkie, Salt Lake City, for Appellants.

Randy S. Ludlow, Salt Lake City, for Appellee.

Before BENCH, BILLINGS, and DAVIS, JJ.

## OPINION

BILLINGS, Judge:

¶1 L.F. (Mother), P.P. (Grandmother) and S.L.F. (Child) appeal the trial court's ruling that Grandmother's adoption of Child does not terminate T.S.'s (Father) parental rights. We affirm.

## BACKGROUND

¶2 In 1996 Mother became pregnant as a result of a sexual relationship with Father. During the pregnancy, Father gave Mother money and purchased clothing, diapers, a changing table, and other items for Child.

¶3 Following Child's birth on March 26, 1997, Mother and Child resided with Grandmother in Davis County. On April 21, 1997,

Grandmother filed an adoption petition, accompanied by Mother's consent, in Third District Court in Salt Lake County. Child's living conditions did not change after the petition was filed. In fact, Mother and Child have always resided with Grandmother, and due to health problems, Mother does not work and has always taken care of Child.

¶4 When the adoption petition was filed, Father also resided in Davis County. However, he was not told about the adoption petition or Mother's consent, and Mother and Grandmother permitted him to visit Child regularly, on average twice per month.

¶5 No actions were taken to complete the adoption until January 12, 1998, when Grandmother filed a motion for a change of venue to transfer the petition to Second District Court in Davis County. On February 9, 1998, that court granted the petition and entered an adoption decree. Sometime in February, Mother told Father about the adoption; however, Mother and Grandmother continued to permit Father to visit Child until early July 1998.

¶6 In addition to visiting Child, beginning in April 1997, Father voluntarily paid $165.00 per month in child support. In December 1997, Father received a raise and increased the support to $175.00. He made monthly payments until February 1998, when Mother refused further payments. Father also offered to place Child on his health insurance, but Mother refused his offer.

¶7 On September 15, 1998, Father filed a complaint alleging various fraud claims and that the adoption was a sham. The complaint demanded that the adoption be set aside, that Father be deemed Child's natural father, and that he be given parental rights. Appellants filed a motion to dismiss, but following a hearing, the trial court denied the motion.

¶8 Following a trial on Father's complaint, the trial court ruled the petition filed in Third District Court was improper because Utah's Adoption Statute (Adoption Statute) requires an adopting party to file the adoption petition in the district where the adopting party resides. Therefore, the trial court concluded Child was "placed for adoption" under the Adoption Statute after she was six months old, when the petition was transferred to Second District Court, the proper court. Because Mother and Child have continuously resided with Grandmother, the trial court also concluded Father was never put on notice that Child was "placed for adoption" as the statute contemplates. Furthermore, the trial court found that Father had established a "substantial relationship" with Child, given her age, by visiting her regularly under restrictions placed on him by Grandmother and Mother. The trial court also found that Father had assumed responsibility for Child by providing financial support during Mother's pregnancy and paying child support. The trial court therefore concluded the adoption was not final as to Father. Following the trial court's ruling, Father filed for and was awarded visitation in a paternity action.

## ISSUES AND STANDARDS OF REVIEW

¶9 Appellants argue they were denied due process because they were prepared to defend against fraud claims, but the trial court relied instead on compliance with the Adoption Statute to invalidate the adoption as to Father. "Constitutional issues, including ... due process, are questions of law which we review for correctness." *In re K.M.*, 965 P.2d 576, 578 (Utah Ct.App.1998). Appellants also argue the trial court improperly ruled Child was not "placed for adoption" until she was at least six months old, and therefore, Father was entitled to notice of the adoption. They further argue the trial court erred by permitting Father to contest a final adoption decree. These issues require statutory interpretation, which we review for correctness, giving no deference to the trial court. *See id.* at 579.

## ANALYSIS

### I. Due Process

¶10 Appellants argue they were denied due process because the trial court effectively allowed Father to amend his complaint at trial to seek relief under the Adoption Statute. Issues not expressly raised in the pleadings may be tried by express or implied consent. *See* Utah R. Civ. P. 15(b).

Although "[a] trial court may not base its decision on an issue that was tried inadvertently[,]" *Colman v. Colman*, 743 P.2d 782, 785 (Utah Ct.App.1987) (quotations and citation omitted), if an issue has been "fully tried, a court may decide the issue and deem the pleadings amended even if the issue was not originally pleaded." *Shinkoskey v. Shinkoskey*, 2001 UT App 44, ¶ 6 n. 2, 19 P.3d 1005 (citing *Fisher v. Fisher*, 907 P.2d 1172, 1176 (Utah Ct.App.1995)). So long as the parties have "notice that a particular issue is being considered by a court" and that notice is "given sufficiently in advance of the proceeding to permit preparation," due process is satisfied. *In re K.M.*, 965 P.2d 576, 579 (Utah Ct.App.1998) (quotations and citations omitted).

■ ¶ 11 The record shows Appellants had adequate notice that compliance with the Adoption Statute was at issue and the issue was fully tried. Father's complaint alleges Child's adoption was a sham with no purpose other than to prohibit him from acting as her natural father. Among other relief, the complaint requests that the adoption be set aside. In response, Appellants filed a motion to dismiss in which they argued the Adoption Statute does not permit adoptions to be set aside due to fraud. They also analyzed Father's failure to comply with Utah Code Ann. § 78–30–4.14(2)(b) (1996), which specifies the requirements an unmarried biological father must meet to be entitled to notice of an adoption when a child is "placed for adoption" before the child is six months old. Father responded by filing a memorandum in opposition in which he argued Child was never "placed for adoption" and analyzed his compliance with the requirements of Utah Code Ann. § 78–30–4.14(2)(a) (1996), which specifies the requirements an unmarried biological father must meet to be entitled to notice when a child is "placed for adoption" after the child is six months old. In addition to these pleadings, the transcript of the hearing on the motion to dismiss establishes Appellants were aware that compliance with the Adoption Statute would be tried. Moreover, at the beginning of trial, the court noted that based on the hearing on the motion to dismiss, filings and proposed findings of fact and conclusions of law, the issue the case hinged on was whether Child was six months old when she was "placed for adoption."

¶ 12 Not only were Appellants aware that compliance would be tried, they also had sufficient opportunity to prepare and to meet the issue. During the hearing on the motion to dismiss, Appellants' counsel noted he would be negligent if he did not conduct discovery in regard to Father's support payments. He then asked the trial court to allow him to depose Father. The trial was held over two months later. At the beginning of the trial, the court and Father's counsel agreed that resolution of the case depended on when Child was "placed for adoption." Instead of objecting or asking for a continuance, Appellants' counsel told the court he was prepared to proceed. Not until the hearing on the objections to the findings of fact and conclusions of law did associated co-counsel suggest Appellants' counsel was unprepared at trial.

¶ 13 In sum, the record shows Appellants were aware that compliance with the Adoption Statute was at issue and had the opportunity to prepare and to meet the issue. Therefore, Appellants were not denied due process. Moreover, because Appellants did not object when compliance was tried, we conclude the issue was tried by implied consent.

## II. "Placed for Adoption" Under Section 78–30–4.14

¶ 14 Appellants argue the trial court erred in ruling Father was entitled to notice of Child's adoption because she was "placed for adoption" under the Adoption Statute after she was six months old, when the adoption petition was transferred to a court which had jurisdiction. Under the Adoption Statute notice of adoption proceedings must be given to "any person . . . whose consent or relinquishment is required under Section 78–30–4.14 unless that right has been terminated by waiver, relinquishment, consent, or judicial action." Utah Code Ann. § 78–30–4.13(2)(a) (Supp.2000). Section 78–30–4.14 requires consent from "an unmarried biological father of an adoptee . . . only if the requirements and conditions of Subsection [78–30–

4.14(2)(a) ] or [78–30–4.14(2)(b) ] have been proven." Utah Code Ann. § 78–30–4.14(1)(f) (1996). An unmarried biological father must meet subsection 78–30–4.14(2)(a)'s requirements if a child is "placed for adoption" more than six months after birth and subsection 78–30–4.14(2)(b)'s requirements if the child is "placed for adoption" within six months of birth. *See id.* at § 78–30–4.14(2)(a).(b).

¶ 15 The trial court ruled Child was "placed for adoption" approximately on January 12, 1998, when the adoption petition was transferred to Second District Court. Because Child was more than six months old, the court ruled subsection 78–30–4.14(2)(a) governed:

(i) With regard to a child who is placed with adoptive parents more than six months after birth, *an unmarried biological father shall have developed a substantial relationship with the child, taken some measure of responsibility for the child and the child's future, and demonstrated a full commitment to the responsibilities of parenthood by financial support of the child, of a fair and reasonable sum and in accordance with the father's ability,* when not prevented from doing so by the

person ... having lawful custody of the child, *and either:*

(A) *visiting the child at least monthly* ... when not prevented from doing so by the person ... having lawful custody of the child; or

(B) regular communication with the child or with the person ... having the care or custody of the child ... when not prevented from doing so by the person ... having lawful custody of the child.

*Id.* (emphasis added). The trial court then found, and Appellants do not dispute, that Father had established a "substantial relationship" with Child and had "taken some measure of responsibility for" her. Because Father met the requirements of subsection 78–30–4.14(2)(a), the trial court concluded Father was entitled to notice, did not receive it, and therefore, the adoption was not final as to him.

¶ 16 Appellants argue Child was "placed for adoption" when Grandmother filed her petition, accompanied by Mother's consent, in Third District Court on April 21, 1997.[1] Therefore, they argue Child was less than six months old when she was "placed for adoption" and subsection 78–30–4.14(2)(b) governed. Because Father did not comply with subsection 78–30.4.14(2)(b)'s requirements,[2]

1. Appellants argued for the first time in oral argument that the petition was merely transferred to the appropriate venue in January 1998, and under Utah Code Ann. § 78–13–11 (1996), the petition should be treated as if it had been filed on April 21, 1997. " 'It is generally inappropriate to raise issues at oral argument that have not been designated as issues on appeal in a docketing statement or in the briefs.' " *State v. Arviso,* 1999 UT App 381, ¶ 4 n. 2, 993 P.2d 894 (citation omitted). This is particularly true when the issue has not been addressed in the briefs. "The rule is well settled that [this court] will not consider issues raised for the first time in a reply brief ... [and it] is equally well settled that this court need not address issues that a party has not briefed." *Maack v. Resource Design & Constr., Inc.,* 875 P.2d 570, 575 n. 3 (Utah Ct.App.1994) (quotations and internal citations omitted); *see also First Sec. Mortgage Co. v. Salt Lake County,* 866 P.2d 1250, 1253 n. 6 (Utah Ct.App.1993) (refusing to address public policy argument that was not briefed and was raised during oral argument). Therefore, we could decline to consider this argument.

Even considering the merits, section 78–13–11 does not control here. This section provides, "When an order is made transferring an action or proceeding for trial ... [t]he court to which

an action or proceeding is transferred shall have and exercise the same jurisdiction as if it had been originally commenced therein." This section merely allows the same jurisdiction to attach as of the date of transfer. More important, the Adoption Statute provides, "Adoption proceedings *shall be commenced* by filing a petition ... in the district where the person adopting resides." Utah Code Ann. § 78–30–7 (Supp.2000) (emphasis added). An overriding concern for notice requires that we follow the literal mandate of the Adoption Statute. Therefore, until the adoption petition was properly filed in Second District Court, where Grandmother resides, the proceeding had not been "commenced" as required by the Adoption Statute.

2. With regard to a child who is under six months of age at the time he is placed with adoptive parents, an unmarried biological father shall have manifested a full commitment to his parental responsibilities by performing all of the acts described in this subsection prior to the time the mother executes her consent for adoption or relinquishes the child to a licensed child-placing agency. The father shall:

(i) initiate proceedings to establish paternity under Title 78, Chapter 45a, Uniform Act on

they were not required to give Father notice of the adoption.

¶ 17 We agree with the trial court's conclusion that Child was "placed for adoption" at the earliest in January 1998, when the petition was transferred to Second District Court. Section 78–30–7 provides:

(1) Adoption proceedings *shall be commenced by filing a petition with the clerk of the district court in the district where the person adopting resides,* or with the juvenile court as provided in Section 78–3a–105. All orders, decrees, agreements, and notices in the proceedings shall be filed with the clerk of that court.

(2) A petition for adoption shall be filed within 30 days of the date the adoptee is placed in the home of the petitioners for the purpose of adoption, unless the time for filing has been extended by the court, or unless the adoption is arranged by a licensed child placing agency in which case the agency may extend the filing time.

Utah Code Ann. § 78–30–7 (Supp.2000) (emphasis added). We have noted that "[c]ritical to the validity of [an] adoption is adherence to the jurisdiction requirement stated in Utah Code Ann. § 78–30–7." *In re Adoption of K.O.,* 748 P.2d 588, 591 (Utah Ct.App.1988) (concluding that appellate court cannot determine whether trial court had jurisdiction to grant adoption without knowing adopting parties' residence at "critical moment" when petition was filed).

¶ 18 Furthermore, this notice requirement is particularly critical in this home placement case. Mother has always taken care of Child, and Mother and Child have always resided with Grandmother. Child's living circumstances did not change after Grandmother filed the adoption petition. Additionally, Mother and Grandmother accepted child support from Father. They also permitted him to have repeated contact with Child, and thus, permitted him to develop a substantial relationship with Child, a relationship our statutory scheme protects. It is particularly critical that parties who seek to adopt, and thus to terminate parental rights, strictly comply with the requirements of the Adoption Statute. Accordingly, to terminate Father's parental rights in this home placement context, Grandmother was required to file the adoption petition in the proper court. Until the petition was transferred to the proper court, Child was not "placed for adoption." Because Child was over six months old when the petition was transferred, and thus when she was "placed for adoption," and because Father had established a substantial relationship with her, Father was entitled to notice of the petition.

¶ 19 Our conclusion is in accord with state policy discussed in prior decisions. We have emphasized, " '[I]n every adoption the best interest of the child should ... be of foremost concern.' " *In re Adoption of C.M.G.,* 869 P.2d 997, 998 (Utah Ct.App.1994) (quoting Utah Code Ann. § 78–30–1.5 (1992)). We have also emphasized, if an unwed biological father has demonstrated " 'a full commitment to the responsibilities of parenthood by *"com[ing] forward to participate in the rearing of his child," his interest in personal contact with his child acquires substantial protection.'* " *T.R.F. v. Felan,* 760 P.2d 906, 912 (Utah Ct.App.1988) (alteration in original) (internal citation omitted) (quoting *Lehr v. Robertson,* 463 U.S. 248, 261, 103 S.Ct. 2985, 2993, 77 L.Ed.2d 614 (1983)); *see also C.M.G.,* 869 P.2d at 1000; *In re K.B.E.,* 740 P.2d 292, 297 (Utah Ct.

---

Paternity, and file with that court a sworn affidavit stating that he is fully able and willing to have full custody of the child, setting forth his plans for care of the child, and agreeing to a court order of child support and the payment of expenses incurred in connection with the mother's pregnancy and the child's birth;

(ii) file notice of the commencement of paternity proceedings with the state registrar of vital statistics within the Department of Health, in a confidential registry established by the department for that purpose; and

(iii) if he had actual knowledge of the pregnancy, paid a fair and reasonable amount of the expenses incurred in connection with the mother's pregnancy and the child's birth, in accordance with his means, and when not prevented from doing so by the person or authorized agency having lawful custody of the child.

Utah Code Ann. § 78–30–4.14(2)(b) (1996).

App.1987). " '[W]here the father has established a substantial relationship with the child ... a State [has] no difficulty in identifying the father....' " *T.R.F.*, 760 P.2d at 913 (quoting *Caban v. Mohammed*, 441 U.S. 380, 392–93, 99 S.Ct. 1760, 1768, 60 L.Ed.2d 297 (1979)). Moreover, terminating the relationship would interrupt the bonding between the father and the child. Accordingly, "[t]here is no public policy favoring the termination of an unwed father's parental rights where the father has had a long-standing relationship with the child." *Id.* at 915.

¶ 20 Furthermore, in home placement cases, like the present case, we emphasize that "there is no need for the state to intervene on behalf of the child and cut off the rights of the natural father" to ensure " 'immediate and continued physical care' " or " 'uninterrupted bonding of a child to its [new adoptive parents],' " because the mother continues to fulfill a parental role. *K.B.E.* 740 P.2d at 298–99 (Jackson, J., concurring) (alteration in original) (citations omitted). Especially when the mother and child live with an adoptive grandparent under circumstances which will remain the same, allowing a father to continue to provide financial support and maintain his relationship with the child has "the potential of benefitting, not harming, [the] child." *Id.* at 296. In this home placement case public policy clearly favors allowing Father to continue his relationship with Child, and requiring Appellants, because they seek to terminate his rights, to strictly comply with the Adoption Statute.[3]

### III. Final Adoption Decree

¶ 21 Appellants argue even if Father was entitled to notice, the Adoption Statute does not allow him to contest the adoption because a final decree was entered. "The cardinal rule in interpreting legislative enactments is 'to assume that each term used in the statute was used advisedly.' " *T.R.F. v. Felan*, 760 P.2d 906, 909 (Utah Ct.App.1988) (quoting *Horne v. Horne*, 737 P.2d 244, 247 (Utah Ct.App.1987)). "Therefore, we interpret and apply the statute in accordance with its literal wording unless it is unreasonably confused or inoperable." *Id.* The Adoption Statute provides:

(1) Whenever any party contests an adoption, *the court shall first determine whether the provisions of this chapter have been complied with. If a party who was entitled to notice and consent under the provisions of this chapter, was denied that right,* and did not otherwise waive or forfeit that right under the terms of this chapter, *the court may:*

   (a) *enjoin the adoption, or dismiss the adoption petition ....*

. . . .

(3) An adoption may not be contested after the final decree of adoption is entered.

Utah Code Ann. § 78–30–4.16 (1996) (emphasis added).

¶ 22 This section's plain language requires a court to *first* determine whether adopting parties have complied with the Adoption Statute by giving notice to those entitled to notice under the statute. We conclude that because Appellants did not comply with the statute's notice requirements, the court which granted the adoption did not enter a decree which was final as to Father.[4]

---

**3.** Although we need not reach the constitutional issues raised by the application of the Adoption Statute in this context, we also note that terminating Father's parental rights might not pass constitutional muster. *See T.R.F.*, 760 P.2d at 914 (concluding that because father had established a substantial relationship with the child, termination of his parental rights for failure to comply with paternity statute violated due process); *K.B.E.*, 740 P.2d at 296 (concluding Adoption Statute violated due process as applied to father where mother and grandfather filed joint adoption petition within hours of child's birth, without telling father of the birth, mother re-

tained custody, and father was willing to assume parental responsibilities).

**4.** Even if a final decree had been entered, we would still conclude that Father is entitled to contest the adoption. To conclude that Father was entitled to notice under the Adoption Statute because he developed a substantial relationship with Child, and then conclude the same statute nevertheless bars Father from contesting the adoption, as Appellants suggest, anytime after a final decree is entered would violate due process. *See In re M.N.M.*, 605 A.2d 921, 926, 930 (D.C.Ct. App.1992) (holding if father grasped his "oppor-

## CONCLUSION

¶ 23 We conclude Appellants had sufficient notice that compliance with the Adoption Statute was at issue, and therefore, they were not denied due process. We also conclude the trial court properly ruled that Child was not "placed for adoption" until the petition was filed in the proper court. Because Child was over six months old and Father had developed a substantial relationship with her, the Adoption Statute required Appellants to give Father notice. Appellants failed to give him notice; therefore, the adoption was not final as to Father and he is entitled to contest the adoption.

DAVIS, Judge (concurring):

¶ 24 Although I agree with the main opinion, I write separately to express my concern over the larger due process issue likely to arise in subsequent cases and to provide material for supreme court review in the event this matter is reviewed by that court. *Cf. In re M.W.,* 2000 UT 79,¶ 8, 12 P.3d 80; *Reese v. Reese,* 1999 UT 75,¶¶ 8–9, 984 P.2d 987; *Layton City v. Peronek,* 803 P.2d 1294, 1298 n. 2 (Utah Ct.App.1990). In my view, if Child was placed for adoption when she was under six months old, the application of section 78–30–4.14 of Utah Code Annotated (1996) under the facts of this case violates Father's right to due process.

¶ 25 Appellants argue if Child was placed for adoption before she was six months old, Father is not entitled to notice, and he may not contest the adoption. Section 78–30–4.14 provides:

(2)(b) With regard to a child who is under six months of age at the time [the child] is placed with adoptive parents, an unmarried biological father shall have manifested a full commitment to his parental responsibilities by performing all of the acts described in this subsection *prior to the time the mother executes her consent for adoption* or relinquishes the child to a licensed child-placing agency. *The father shall:*

(i) *initiate proceedings to establish paternity* under Title 78, Chapter 45a, Uniform Act on Paternity, and file with that court a sworn affidavit stating that he is fully able and willing to have full custody of the child, setting forth his plans for care of the child, and agreeing to a court order of child support and the payment of expenses incurred in connection with the mother's pregnancy and the child's birth;

(ii) file notice of the commencement of paternity proceedings with the state registrar of vital statistics within the Department of Health, in a confidential registry established by the department for that purpose; and

(iii) if he had actual knowledge of the pregnancy, paid a fair and reasonable amount of the expenses incurred in connection with the mother's pregnancy and the child's birth, in accordance with his means, and when not prevented from doing so by the person or authorized

---

tunity interest" under *Lehr v. Robertson,* 463 U.S. 248, 262, 103 S.Ct. 2985, 2993, 77 L.Ed.2d 614 (1983), but was not given actual notice of the adoption, he had a right to be " 'restored ... to the position he would have occupied had due process of law been accorded to him in the first place' " (citation omitted)); *In re Adoption of Knipper,* 30 Ohio App.3d 214, 507 N.E.2d 436, 438 (1986) (concluding statute which barred all adoption contests one year after decree was entered violated biological mother's right to due process where four years after entry of decree mother filed motion to vacate decree due to defective constructive service).

However, even if due process entitles Father to contest the adoption after a final decree was entered, it does not follow that Father's right to contest the adoption is unlimited by time constraints. Before section 78–30–4.16(3) was enacted, we applied Rule 60(b) of the Utah Rules of Civil Procedure to adoption contests. *See Maertz v. Maertz,* 827 P.2d 259, 260 (Utah Ct.App.1992); *cf. Thiele v. Anderson,* 1999 UT App 056, ¶ 16, 975 P.2d 481 (noting Utah R. Civ. P. 60(b) has been implicitly accepted for use in adoption cases). Rule 60(b) allows courts to entertain independent actions to relieve parties from judgments, orders or proceedings. *See* Utah R. Civ. P. 60(b). We have noted that independent actions, similar to the action Father brought in the present case, are governed by equitable principles such as laches. *See Maertz,* 827 P.2d at 261 n. 4. To successfully assert laches, a respondent must show the petitioner "unreasonably delayed in bringing an action" and the respondent was "prejudiced by that delay." *Nilson–Newey & Co. v. Utah Res. Int'l,* 905 P.2d 312, 314 (Utah Ct. App.1995). Appellants did not make such showing in the present case.

agency having lawful custody of the child.

. . . .

(5) An unmarried biological father *who does not fully and strictly comply with each of the conditions provided in this section, is deemed to have waived and surrendered any right in relation to the child,* including the right to notice of any judicial proceeding in connection with the adoption of the child, and his consent to the adoption of the child is not required.

Utah Code Ann. § 78–30–4.14 (1996) (emphasis added). Utah's adoption statute does not excuse a father from strict compliance based on any party's action, statement, or omission, and it does not permit a decree to be vacated due to fraud. *See id.* at § 78–30–4.15 (Supp. 2000).

¶ 26 Although Father likely met the requirements of subsection (2)(b)(iii) by giving Mother money during her pregnancy, Father failed to meet the requirements of subsection (2)(b)(i) because he did not file his paternity action until after Mother executed her consent in April 1997. Although he did not strictly comply with subsection (2)(b), Father argues he timely and fully assumed parental responsibilities, and his resulting relationship with Child is protected by the due process clauses of the federal and Utah constitutions. He also argues Utah's adoption statute is unconstitutional as applied to him because it fails to adequately balance the parties' interests.

¶ 27 Our courts have recognized that the Adoption Statute may violate due process as applied. *See In re Adoption of T.R.F.,* 760 P.2d 906, 915 (Utah Ct.App.1988). In *T.R.F.,* the adoption statute required a father to file a paternity notice prior to the mother's relinquishment of the child, the placement of the child in a licensed adoption agency, or the filing of an adoption petition by the adoptive parents. *See id.* at 910. Similar to Father in the present case, the father in *T.R.F.* established a substantial relationship with his

child, meeting the requirements of the adoption statute's public acknowledgment section.[1] *See id.* The father was a marine stationed in Japan, then later in California. *See id.* at 907. Prior to the child's birth, he was married to another woman; however, he purchased furniture and clothing for the child. *See id.* He was also listed on the child's birth certificate, and the child was given his surname. *See id.* After the father was discharged, he moved to Salt Lake City, and the father, mother, and child lived together for periods of time. *See id.* The mother and father eventually had a falling out, the mother and child moved out, and the father visited the child twice per month, two to three hours each time, and occasionally took the child overnight and on trips. *See id.* Additionally, the father paid $2,500 to mother, but did not pay regular child support. *See id.* at 908. After the mother was diagnosed with cancer, the adoptive parents began tending the child, then took physical custody and filed an adoption petition. *See id.* Shortly thereafter the mother executed her consent for adoption. *See id.* Although the father was aware the adoptive parents were taking care of the child, he believed he would have custody of the child upon the mother's death. *See id.* at 908, 915 n. 5. He was unaware until after the mother's death that the mother intended to place the child for adoption, that an adoption petition had been filed, and that the mother had consented to the adoption. *See id.* The father filed a paternity acknowledgment the day after he learned of the adoption petition. *See id.* at 908. Although the trial court found the father had established a relationship with the child and was a fit parent, the court terminated the father's rights because he failed to file a paternity notice before the adoptive parents filed their petition for adoption, and because the court believed such placement would be in the best interest of the child. *See id.*

¶ 28 This court concluded that because the father had established a substantial relation-

---

1. *See* Utah Code Ann. § 78–30–12 (1987), repealed by Act of 1990, ch. 245, § 24, 1990 Utah Laws 1173, 1178. This section is a predecessor to section 78–30–4.14(2)(a), which currently provides that if a child is placed after six months, a father is entitled to notice and consent if he has established a substantial relationship with his child. *See* Utah Code Ann. § 78–30–4.14(2)(a) (1996).

ship before the adoptive parents filed their petition, termination of his parental rights for his failure to comply with the paternity statute violated the father's due process rights. *See id.* at 914.

> [W]hen the unwed father acknowledges his child, within the meaning of the acknowledgment statute, prior to the mother's relinquishment of the child or prior to the filing of the petition for adoption, then the father need not comply with the requirements of the paternity statute. However, if the claimed acts of acknowledgment occur after the mother's relinquishment or after the petition for adoption has been filed, then the paternity statute governs.

*Id.* at 915 (emphasis omitted). We explained,

> "where a parent has fulfilled parental obligations over a period of time, then the parent's parental rights are entitled to a high degree of protection. There is no public policy favoring the termination of an unwed father's parental rights where the father has had a long-standing relationship with the child, is determined to be a fit parent, and where those seeking to adopt the child are strangers who have been deceptive in their adoption plans."

*Id.*

¶ 29 Like the father in *T.R.F.*, Father was unaware that Mother executed her consent or that Grandmother filed an adoption petition. He visited Child and paid child support for months following the consent and petition. Not until after the decree was entered was he told about the adoption. Also like the father in *T.R.F.*, Father had a substantial relationship with Child. In *T.R.F.* we noted the father had established a substantial relationship before the petition was filed. *See id.* at 908. However, in the present case, Mother executed her consent within a month of Child's birth. While Father had not established a substantial relationship with Child at that point, he had fulfilled all of his responsibilities under the adoption statute by giving Mother money and purchasing items for Child during Mother's pregnancy. Therefore, Father need not comply with the strict requirements of the statute because, like the father in *T.R.F.*, Father established a sub-stantial relationship with Child prior to relinquishment.

¶ 30 Prior to *T.R.F.*, we held the adoption statute violated a father's due process rights in an in-home placement context. In *In re K.B.E.*, 740 P.2d 292 (Utah Ct.App.1987), the mother lived with the child's grandfather before and after the child's birth and adoption. *See id.* at 294. The mother did not want the father present at the birth and did not tell him about the child's birth. *See id.* Within two hours of the birth, the mother and grandfather filed a joint adoption petition. *See id.* at 297. Later that afternoon, the father learned of the birth and filed an acknowledgment of paternity. *See id.* at 293. The father subsequently intervened in the adoption proceedings. *See id.*

¶ 31 In deciding the adoption statute as applied violated the father's right to due process, we recognized the State's interest to facilitate the bonding process between the child and the adoptive parents in early adoptions must be balanced against the biological parent's interest in maintaining and developing a parental relationship. *See id.* at 296. We also noted, " '[w]hen an unwed father demonstrates a full commitment to the responsibilities of parenthood by "com[ing] forward to participate in the rearing of his child," his interest in personal contact with his child acquires substantial protection under the Due Process Clause.' " *Id.* (quoting *Lehr v. Robertson*, 463 U.S. 248, 262, 103 S.Ct. 2985, 2993, 77 L.Ed.2d 614 (1983)). We emphasized that the State's interest would not be promoted by disallowing the father's acknowledgment of paternity because the mother retained custody, she and the child lived with the grandfather, and the living arrangements would remain the same. *See id.* We also emphasized that the father would provide financial support and would be able to develop a substantial relationship with the child and these circumstances had the potential of benefitting, not harming the child. *See id.* We concluded:

> To deprive both [the father] and [the child] of the possible benefits of their relationship simply because [the father] filed his notice just a few hours after appellants filed their petition for adoption—which pe-

tition had been prepared much earlier, possibly with the intent of thwarting respondent—flies in the face of fundamental fairness and due process.... This is particularly true where the father is willing to assume the responsibilities of parenthood and the mother is not relinquishing custody of the child.

*Id.* at 296–97.

¶ 32 The facts in *K.B.E.* are very similar to the facts in the present case. Like the father in *K.B.E.*, Father was initially unaware of Child's birth and was not listed on the birth certificate. He was also unaware of Mother's consent to the adoption and Grandmother's adoption petition until after the final adoption decree had been entered. Also like the mother, grandfather, and child in *K.B.E.*, Appellants live together. However, unlike *K.B.E.*, the issue of filing a timely paternity notice is not central to the present case. Here, Father was subsequently allowed to develop a substantial relationship with Child, which was clearly determined by the trial court and not challenged by Appellants. Father paid child support and visited Child for months after Mother executed her consent. Because Father is willing to support Child and continue his substantial relationship with her, we should follow our reasoning in *K.B.E.* and conclude the statute as applied to Father violates due process.

¶ 33 Our courts have also recognized the adoption statute may violate due process as applied where it is impossible for a father, through no fault of his own, to comply with the statute, and, therefore, he lacks "reasonable opportunity" to protect his rights.[2] *See, e.g., In re Adoption of Baby Boy Doe,* 717 P.2d 686, 691 (Utah 1986) (concluding where father was unaware he needed to protect his rights, he lacked reasonable opportunity); *Ellis v. Social Servs. Dep't of the Church of Jesus Christ of Latter-Day Saints,* 615 P.2d 1250, 1256 (Utah 1980) (concluding father was entitled to show he could not reasonably have been expected to comply with adoption statute where mother and father lived in California, mother relinquished child in Utah within four days of birth without father's knowledge, and declared father unknown).

¶ 34 In conclusion, because Father was involved in supporting Mother during her pregnancy and assumed parental responsibilities, like the fathers in *T.R.F.* and *K.B.E.*, his due process rights were infringed.

BENCH, Judge (concurring in result):

¶ 35 I fully agree with the result in the majority opinion affirming the trial court's decision that the adoption was not final as to Father because Appellants did not strictly comply with the notice requirements of the adoption statute.

¶ 36 I do not endorse the dicta in footnotes three and four of the majority opinion, and in Judge Davis's concurrence, concerning the potential unconstitutionality of the adoption statute. This case concerns only whether the requirements of the adoption statute have been complied with. We hold that Child in this case was not "placed for adoption" until the petition was transferred to the proper court. At that point, Child was more than six months old. Thus, Father was entitled to notice because he had complied with the requirements of Utah Code Ann. § 78–30–4.14(2)(a) (1996).

¶ 37 Having thus resolved the disputed issues on statutory grounds, it is unnecessary and inappropriate for us to speculate on the potential due process issues involved when applying subsection 78–30–4.14(2)(b), which governs when a child less than six months old is placed for adoption. *See State v. Anderson,* 701 P.2d 1099, 1103 (Utah 1985) ("It is a fundamental rule that this Court should avoid addressing constitutional issues unless required to do so."); *Hoyle v. Monson,* 606 P.2d 240, 242 (Utah 1980) (refusing to address validity of statute because "unnecessary decisions are to be avoided and ... the courts should pass upon the constitutionality of a statute only when such a determination is essential to the decision in a case").

¶ 38 I therefore concur only in the result.

---

**2.** Our courts refer to this circumstance as the impossibility exception. *See In re Adoption of*

*W.,* 904 P.2d 1113, 1118 (Utah Ct.App.1995).