33 P.3d 1083 (2001)
2001 UT App 290
In the matter of the ADOPTION OF B.V., a minor.
S.H., Appellant,
v.
W.V., Appellee.
No. 20000499-CA.
Court of Appeals of Utah.
October 4, 2001.
Sharon L. Preston, Salt Lake City, for Appellant.
Kristine M. Rogers, Gary L. Bell, and Candice Ragsdale-Pollock (on the brief), Salt Lake City, for Appellee.
Before GREENWOOD, P.J., BILLINGS and ORME, JJ.

*1084 OPINION
BILLINGS, Judge:
¶ 1 S.H. (Father) appeals the trial court's ruling terminating his parental rights because he failed to comply with Utah's Adoption Statute (Adoption Statute). We reverse and remand.

BACKGROUND
¶ 2 In early June of 1998, Father and W.V. (Mother) became engaged. Although they maintained separate residences, Father occasionally stayed overnight with Mother.
¶ 3 In late June, Father was elated to learn Mother was pregnant with B.V. (Child). They discussed names for Child. Father began purchasing child care supplies and maternity clothing, valued by the trial court at roughly $75. At trial Father testified that until October of 1998, he also regularly gave Mother cash. Because Father did not produce any documentation substantiating his testimony, the trial court found that Father had given Mother no more than $130.
¶ 4 Because the pregnancy was high risk, Mother was required to see her doctor once a week for the first two months and bi-weekly thereafter. Father accompanied Mother to one of her appointments in July. Also in July, Mother approached Father about insurance to cover medical expenses related to the pregnancy and birth. Father did not have insurance. He inquired about but was unable to obtain insurance through his employer, apparently because Mother and Father were not married. After Mother learned Father was unable to obtain insurance, she told him that she planned to apply for Medicaid. Mother paid roughly $150 for a pregnancy test and "a couple of" doctor appointments before Medicaid commenced payment. There is nothing in the record indicating Mother asked Father to contribute to these expenses. At trial Father testified that he subsequently tried to obtain private health insurance for Child, but was told that he needed to provide birth information and a social security number to obtain coverage.
¶ 5 Mother and Father had a rocky relationship. They separated temporarily in July and ended their relationship in October. At both times, Mother told Father that she intended to place Child for adoption and Father objected.
¶ 6 Throughout the pregnancy, Father continued to purchase child care supplies, clothing, and toys which he kept at his residence. He eventually furnished a nursery, purchasing a dresser and acquiring a crib, high chair, and swing.
¶ 7 At least monthly until Child's birth, Father tried to contact Mother by phone, leaving several messages on her answering machine. Mother did not return any of Father's calls. Father did not otherwise try to contact Mother although he knew where she lived until twelve days before Child's birth.
¶ 8 Concerned about protecting his parental rights, Father contacted various agencies and the hospital where he believed Child would be born. In November, Father contacted the Utah Department of Human Services, Office of Recovery Services (ORS) about stopping the adoption, obtaining custody, and reimbursing medical expenses. ORS sent Father a background form which he completed, believing it was a voluntary declaration of paternity. The form was returned to him in December with a note explaining that ORS cannot open a case for an unborn child and does not handle custody matters.
¶ 9 In early January of 1999, Father retained counsel. On counsel's advice, he sent letters, dated January 16, 1999, to Mother's medical providers, naming himself as the responsible party and requesting that medical bills be sent to him.
¶ 10 On January 20, 1999, Father filed a complaint for paternity, accompanied by an affidavit, as required by Utah law for an unwed biological father to assert his parental rights. In the affidavit Father: (1) stated that he desired "full custody of [Child] and [he is] capable of providing financial support, a stable and loving home, and ... day-to-day care for [Child];" (2) "consent[ed] to a court order requiring [him] to pay child support" and his "share of expenses related to [Mother's] pregnancy and [Child's] birth, as provided by law;" (3) stated that he "offered to pay expenses related to [Mother's] pregnancy *1085 and [Child's] birth, but [Mother] ... refused to allow [him] to do so, or to provide [him] with information regarding such expenses;" and (4) stated that he contacted those he "believe[d] [were] providing medical care to [Mother], to inform them that [he is] the father of [Child] and ... [he is] willing to pay [his] share of the related expenses."
¶ 11 Mother was served with notice of Father's complaint the day it was filed. On January 25, 1999, Father filed a Notice of Commencement of Paternity Proceedings with the Utah Department of Health, Bureau of Vital Records (Department of Health).
¶ 12 While Father was attempting to protect his parental rights, Mother contacted an adoption agency and selected M.G. and G.G. (Adoptive Parents) as adoptive parents for Child. On January 12, 1999, Adoptive Parents filed an adoption petition.
¶ 13 Child was born on February 14, 1999. The following day, Mother relinquished her parental rights and consented to Child's adoption. Child was placed and has resided with Adoptive Parents since his release from the hospital. After Child was placed, Father sent a $1,000 check to Adoptive Parents for partial reimbursement of expenses related to the pregnancy and birth.
¶ 14 DNA tests done in March confirmed Father's paternity and he filed a motion to enjoin and dismiss the adoption, arguing the Adoption Statute required Adoptive Parents to obtain his consent before they could adopt Child. Father's paternity action was consolidated with Adoptive Parent's amended adoption petition and petition to terminate Father's parental rights. Father then made a motion to deposit money with the court for payment of medical expenses.
¶ 15 From the end of April to July, Father exercised supervised visitation with Child. In April and May, Father voluntarily underwent psychological testing in support of his request for unsupervised visitation. Test scores indicated he had "superior parenting knowledge and capacity."
¶ 16 Following an evidentiary hearing on the consolidated actions, the trial court determined that Father had made only token contributions toward pregnancy related expenses. The trial court refused to credit Father's purchases of the child care items he kept at his residence because he did not make them available to Mother. Consequently, the trial court concluded Father failed to pay a fair and reasonable amount of the expenses incurred in connection with Mother's pregnancy and Child's birth, as required by Utah Code Ann. § 78-30-4.14(2)(b)(iii) (1996), and therefore Father's consent to Child's adoption was not required. Father then filed a motion in which he argued subsection 78-30-4.14(2)(b)(iii), as applied by the trial court, violated due process and equal protection. The trial court denied this motion and Father filed this appeal.

ISSUES AND STANDARDS OF REVIEW
¶ 17 Father argues the trial court erred in ruling that he failed to comply with subsection 78-30-4.14(2)(b)(iii). Whether the trial court's interpretation of this subsection was proper "is a question of law[;] therefore, we apply a correction-of-error standard" and accord "no particular deference" to the trial court's interpretation. In re Adoption of T.R.F., 760 P.2d 906, 909 (Utah Ct.App.1988). Father also argues subsection 78-30-4.14(2)(b)(iii) violates his right to due process and equal protection. "`Constitutional issues... are questions of law which we [also] review for correctness.'" In re Adoption of S.L.F., 2001 UT App 183, ¶ 9, 27 P.3d 583 (citation omitted).

ANALYSIS
¶ 18 Father argues he complied with the requirements of section 78-30-4.14(2)(b), and therefore his consent to Child's adoption is required and his parental rights cannot be terminated. Section 78-30-4.14(2)(b) requires an unwed biological father's consent to an adoption when, as in the present case, a child is under six months old when the child is placed with adoptive parents, and the father has
manifested a full commitment to his parental responsibilities by performing all of the acts described in this subsection prior to the time the mother executes her consent for adoption or relinquishes the child to a *1086 licensed child-placing agency. The father shall:
(i) initiate proceedings to establish paternity under Title 78, Chapter 45a, Uniform Act on Paternity, and file with that court a sworn affidavit stating that he is fully able and willing to have full custody of the child, setting forth his plans for care of the child, and agreeing to a court order of child support and the payment of expenses incurred in connection with the mother's pregnancy and the child's birth;
(ii) file notice of the commencement of paternity proceedings with the state registrar of vital statistics within the Department of Health, in a confidential registry established by the department for that purpose; and
(iii) if he had actual knowledge of the pregnancy, paid a fair and reasonable amount of the expenses incurred in connection with the mother's pregnancy and the child's birth, in accordance with his means, and when not prevented from doing so by the person or authorized agency having lawful custody of the child.
Id.
¶ 19 An unwed biological father must "`fully and strictly comply' with the conditions stated above" or "he `is deemed to have waived and surrendered any right in relation to the child, ... and his consent to the adoption is not required.'" In re Adoption of B.B.D., 1999 UT 70, ¶ 16, 984 P.2d 967 (quoting Utah Code. Ann. § 78-30-4.14(5) (1996)). Thus, to preserve his parental rights, an unwed biological father must initiate a proceeding to establish paternity, file a notice of the proceeding with the Department of Health, and if he has knowledge of the pregnancy, pay in so far as practicable a reasonable amount of the expenses incurred in connection with the pregnancy and birth, before the mother consents to the child's adoption.
¶ 20 Before Mother consented to Child's adoption, Father initiated a proceeding to establish paternity. His complaint was accompanied by an affidavit in which he "consent[ed] to a court order requiring [him] to pay child support" and his "share of expenses related to [Mother's] pregnancy and [Child's] birth, as provided by law" and stated he had "offered to pay expenses related to [Mother's] pregnancy and [Child's] birth, but [Mother] ... refused to allow [him] to do so, or to provide [him] with information regarding such expenses." Father also filed a notice of commencement of the paternity proceeding with the Department of Health. Therefore, the only issue we must decide is whether Father complied with subsection 78-30-4.14(2)(b)(iii) before Mother consented to Child's adoption.
¶ 21 This case presents the first opportunity for a Utah appellate court to consider the application of subsection 78-30-4.14(2)(b)(iii). By its plain language, this subsection requires an unwed biological father, who has knowledge of the mother's pregnancy, to pay a fair and reasonable amount of the expenses incurred in connection with the mother's pregnancy and the child's birth, in accordance with his means, when not prevented from doing so by the person having custody of the child, before the mother consents to the child's adoption.
¶ 22 The trial court concluded that Father failed to pay "fair and reasonable" expenses incurred in connection with the pregnancy and birth. In sum, the trial court determined that Father made only token contributions toward pregnancy expenses, did not pay any pregnancy or birth expenses from September 1998 through January 1999, manifested only a bona fide subjective intent to establish parental rights by acquiring child care items which he did not make available to Mother,[1] and did not pay any medical expenses.
¶ 23 We conclude the trial court erred in focusing solely on what Father actually paid. In a case such as this, where a mother consents to a child's adoption the day after the child's birth, such an interpretation of the *1087 requirements of subsection 78-30-4.14(2)(b)(iii) is unreasonable.
¶ 24 Subsection 78-30-4.14(2)(b)(iii) requires that a father timely pay a "fair and reasonable" amount of the expenses in accordance with his means. "Reasonable" has been defined as "[f]air, proper, or moderate under the circumstances." Black's Law Dictionary 1272 (7th ed.1999). Courts in other jurisdictions have recognized, under similar statutory schemes, manifestations of parental responsibility, similar to Father's manifestations in this case, and required the consent of unwed biological fathers to their children's adoptions. See In re Adoption of S., 166 A.D.2d 599, 560 N.Y.S.2d 886, 888 (1990) (concluding father sufficiently manifested parental responsibility and established his right to veto adoption, although he did not pay any pregnancy or birth expenses, because he publicly acknowledged paternity and mother arranged for Medicaid to pay hospital bill and declined father's offer to pay expenses); Abernathy v. Baby Boy, 313 S.C. 27, 437 S.E.2d 25, 29 (S.C.1993) (concluding father's consent to adoption was required because he "under[took] sufficient prompt and good faith efforts to assume parental responsibility and to comply with the [adoption] statute" by attempting to pay medical expenses, but was told there were no medical expenses because they had been paid by the Navy, and by attempting to provide monetary support which mother, who shielded herself from contact with father, declined).
¶ 25 In cases such as this, when a mother consents to a child's adoption within days of the child's birth, we conclude subsection 78-30-4.14(2)(b)(iii) merely requires that the father agree to be legally responsible for expenses related to the pregnancy and birth and attest in his affidavit that he attempted to pay his reasonable share of medical and pregnancy related expenses but that he was not provided information as to the nature of those expenses by the mother. Father did both. In his affidavit Father consented "to a court order requiring [him] to pay child support" and his "share of expenses related to [Mother's] pregnancy and [Child's] birth, as provided by law." He further attested that he had attempted to pay his reasonable share of medical expenses, but Mother did not provide him with information regarding those expenses. Of course a mother can file a counter-affidavit with the trial court contesting the father's assertion of his attempts to pay his reasonable share of medical and pregnancy expenses. Only then must the court hold an evidentiary hearing to determine if in fact the father was given notice of medical and pregnancy related expenses and refused to pay his reasonable share of those expenses when able to do so.[2] In this case there is no evidence establishing that Mother asked Father to pay specific medical or pregnancy related expenses and that he refused to do so.
¶ 26 In fact Father did more than subsection 78-30-4.14(2)(b)(iii) requires under the circumstances. Mother's testimony indicates that in July of 1998 Father attempted, but was unable to obtain insurance through his employer. Father testified that he subsequently attempted, but was unable to obtain private medical insurance for Child. Moreover, in November, Father contacted ORS, the state agency he believed would not only help him establish paternity and obtain custody, but would also facilitate reimbursement of medical expenses. When he discovered ORS could not help him, he sent letters to Mother's doctor and the hospital, requesting that bills be sent to him. Father has not been billed for any medical expenses and these expenses appear to comprise the majority of expenses incurred in connection with the pregnancy and birth.
¶ 27 We conclude subsection 78-30-4.14(2)(b)(iii), as applied when a mother consents to a child's adoption soon after the child's birth, merely requires that the father agree to be legally responsible for the expenses, and when the mother specifically requests, requires that the father make reasonable *1088 efforts to contribute to medical and pregnancy related expenses if he is able to do so. Father did so in this case. Therefore, we conclude the trial court erred in ruling Father failed to comply with subsection 78-30-4.14(2)(b)(iii).
¶ 28 A different interpretation of subsection 78-30-4.14(2)(b)(iii) would raise serious due process concerns. We have held that the Adoption Statute violates due process when its application fails to further the state's interests and "flies in the face of fundamental fairness." In re Adoption of K.B.E., 740 P.2d 292, 296 (Utah Ct.App.1987).[3] Although decided under our prior statutory scheme, K.B.E. is instructive here because the father in K.B.E. similarly faced termination of his parental rights although he had not had the opportunity to form a relationship with his newborn child. See id. at 293. In K.B.E. the mother filed a joint adoption petition with her grandfather within hours of the child's birth. See id. At that time, the Adoption Statute required an unwed biological father to file an acknowledgment of paternity before the adoption petition was filed or his parental rights were forever barred. See id.; Utah Code Ann. § 78-30-4(3) (1986). After the father learned of the birth later that afternoon, he filed an acknowledgment of paternity. See K.B.E., 740 P.2d at 293.
¶ 29 In concluding that terminating the father's parental rights would violate due process, we recognized, "`The state has a strong interest in speedily identifying those persons who will assume the parental role over [newborns,]'" to ensure "`immediate and continued physical care'" and "`facilitate early and uninterrupted bonding of a child to [his or her] parents.'" Id. at 294 (citation omitted). However, we also recognized that the state's "interest must be balanced against the constitutionally protected right of the unwed father to maintain and develop a parental relationship." Id. at 296 (emphasis added). Accordingly, to deprive the father and the child of the possible benefits of their relationship simply because the father filed his acknowledgment just a few hours after the adoption petition was filed, "[flew] in the face of fundamental fairness and due process." Id. The Adoption Statute "was `not created to encourage a "race" for placement to cut off the rights of fathers who are identified and present.'" Id. (emphasis added) (citation omitted).
¶ 30 As in K.B.E., the state's interest in speedily identifying fathers who are willing to assume a parental role is not impeded by our requiring an unwed biological father's consent to the adoption of his child in a case such as the present. Here Father was timely identified to all parties according to our statutory scheme before Mother consented to Child's adoption.
¶ 31 We agree with Adoptive Parents that the state not only has an interest in speedily identifying fathers who will assume a parental role, but also has an interest in holding parents accountable for meeting the financial needs of their children. Father has demonstrated such commitment by consenting to the entry of a court order requiring that he pay his share of expenses. He also did all he reasonably could do to pay the medical expenses before Mother consented to Child's adoption. Thus, the state's interest in requiring *1089 fathers to be financially responsible for their children is not impeded by our refusing to terminate Father's parental rights.[4] Furthermore, our holding that a father, in cases such as this, must only assume legal responsibility for expenses incurred in connection with the pregnancy and birth, and when requested and when able, pay his reasonable share of documented medical and pregnancy related expenses, creates a bright line rule that furthers the state's interest in promoting certainty in adoptions.[5]

CONCLUSION
¶ 32 Subsection 78-30-4.14(2)(b)(iii) only requires a father, in a case where a mother consents to a child's adoption within a short time of the child's birth, to assume legal responsibility for expenses incurred in connection with the pregnancy and birth and make reasonable efforts to pay his reasonable share of expenses when specifically requested to do so by the mother. Because Father complied with his statutory obligations, the trial court erred in ruling that his consent to Child's adoption is not required. We therefore reverse and remand for proceedings consistent with our opinion.
¶ 33 WE CONCUR: PAMELA T. GREENWOOD, Presiding Judge and GREGORY K. ORME, Judge.
NOTES
[1] The trial court's refusal to credit Father because he did not make the child care items available to Mother seems odd because Mother at all times made it clear to Father that she intended to place Child for adoption immediately after birth.
[2] Although subsection 78-30-4.14(2)(b)(iii) does not specifically require that the mother give the father notice of the medical expenses she wishes him to share in paying, the statute would be inoperable without this requirement. Given the mother's physician patient confidentiality and modern billing practices there is no other way for the father to be made aware of the medical expenses he is being asked to pay.
[3] Utah appellate courts have also recognized that the Adoption Statute violates due process as applied when it is impossible for fathers to comply with the statute's acknowledgment of paternity requirements through no fault of their own. See In re Adoption of Baby Boy Doe, 717 P.2d 686, 690-91 (Utah 1986) (concluding termination of father's parental rights violated due process because parties were aware father objected to adoption, mother's assurances misled father into believing that he did not need to protect his parental rights, and father was out-of-state and was thus unaware of child's birth until one day after adoption petition had been filed); Ellis v. Social Servs. Dep't, 615 P.2d 1250, 1256 (Utah 1980) (concluding father was entitled to show that he was not afforded opportunity to comply with adoption statute where he asserted mother moved to Utah and placed child for adoption without his knowledge).

In the present case Father has similarly been unable, through no fault of his own, to actually pay the medical expenses, which appear to be the majority of expenses, incurred in connection with the pregnancy and birth. Father agreed to pay these expenses in his affidavit filed in court and in his letters to Mother's medical providers. However, Father was not billed and could not, as a practical matter given the realities of contemporary computerized billing procedures, have been billed for such expenses in the hours before Mother consented to Child's adoption.
[4] While we recognize and regret the potential for disruption in Child's placement, Father has exercised visitation with Child and has demonstrated a sincere interest in developing a relationship with Child. This is not the usual case where the State has an interest in cutting off the rights of an "unknown, uncaring and uncommitted" father. Sanchez v. L.D.S. Soc. Servs., 680 P.2d 753, 757 (Utah 1984) (Durham, J., dissenting).
[5] We so hold to uphold the constitutionality of subsection 78-30-4.14(2)(b)(iii). See, e.g., In re Marriage of Gonzalez, 2000 UT 28, ¶ 23, 1 P.3d 1074 (noting courts have "`a duty to construe ... statute[s] ... to ... avoid and/or save [them] from constitutional conflicts or infirmities'" (citation omitted)); Campbell v. Campbell, 896 P.2d 635, 641 (Utah Ct.App.1995) (emphasizing that this court "strive[s] to construe statutes so as to uphold them as consistent with both our state constitution and the federal constitution").