◼ In the Matter of KIRAN CHANDINI S., an Infant. JOSEPH D. et al., Appellants; RAJNISH S., Respondent.—In an adoption proceeding, the adoptive parents appeal, as limited by their briefs, from much of of a decree of the Surrogate's Court, Kings County (Bloom, S.), dated January 30, 1990, as, after a nonjury trial, decreed (1) that the consent of the natural father of the subject child born out of wedlock could not be dispensed with, and (2) that the proposed adoption would not be in the best interests of the child.

Ordered that the decree is modified, on the law, by deleting the second decretal paragraph thereof which held that the proposed adoption is not in the child's best interests; as so modified, the decree is affirmed insofar as appealed from, with costs to the respondent.

The adoptive parents contended that the natural father's consent was not required pursuant to Domestic Relations Law § 111 (1) (e). After a nonjury trial, the Surrogate determined

that the father's consent was necessary for a valid adoption of the child.

Thereafter, the Court of Appeals declared Domestic Relations Law § 111 (1) (e) unconstitutional *(see, Matter of Raquel Marie X.,* 76 NY2d 387). In particular, the court found in *Matter of Raquel Marie X. (supra)* that Domestic Relations Law § 111 (1) (e) (requiring the father to have "openly lived with the child or the child's mother for a continuous period of six months immediately preceding the placement of the child for adoption") focussed unduly "on the relationship between the father and mother, rather than the father and child" *(Matter of Raquel Marie X., supra,* at 405), and that the "living together" *(see,* Domestic Relations Law § 111 [1] [e] [i]) requirement did not sufficiently further the State's interest in "determining the existence of a significant parental concern for a relationship with the child" *(Matter of Raquel Marie X., supra,* at 405). In striking down Domestic Relations Law § 111 (1) (e) (i), the court found it necessary to declare all of section 111 (1) (e) unconstitutional.

Having declared Domestic Relations Law § 111 (1) (e) unconstitutional, the Court of Appeals then noted the necessity for establishing new, interim criteria to be applied in determining whether the father's consent to an adoption would be deemed necessary. The Court of Appeals observed that an unwed father's right to a continued parental relationship is to be measured by his "manifestation of parental responsibility" *(Matter of Raquel Marie X., supra,* at 408) which, in the case of newborn infants, means that "the qualifying interest of an unwed father requires a willingness himself to assume full custody of the child—not merely to block adoption by others". Moreover, the court noted that "the manifestation of parental responsibility must be prompt" *(Matter of Raquel Marie X., supra,* at 408).

The court set forth the following guidelines for evaluating the sufficiency and promptness of the father's actions: "courts should give due weight to the remaining portions of Domestic Relations Law § 111 (1) (e) * * * Perhaps most significantly, they establish the period in which the father's manifestation of responsibility for the child is to be assessed—the six continuing months immediately preceding the child's placement for adoption. The interim judicial evaluation of the unwed father's conduct in this key period may include such considerations as his public acknowledgement of paternity, payment of pregnancy and birth expenses, steps taken to establish legal responsibility for the child, and other factors evincing a

commitment to the child" *(Matter of Raquel Marie X., supra, at 408)*.

Applying these new criteria to the matter at bar, we find that the natural father has sufficiently demonstrated his "manifestation of parental responsibility". In so holding, we affirm the findings of the Surrogate's Court that the father did publicly acknowledge his paternity in the six-month period prior to the child's placement. Furthermore, although he did not pay any pregnancy or birth expenses, he had offered to do so but the natural mother declined the offer. She had no prenatal care and made arrangements for the hospital bill to be paid by Medicaid. Thus, effectively, there were no medical bills for the father to pay. It additionally appears that the reason that the father did not himself assume custody of the child was because he did not believe that the mother would actually place the child for adoption. Moreover, when the mother did give custody of the child to the adoptive parents, it was without the knowledge of the father. Accordingly, on this state of facts, we find no abandonment or waiver of the father's rights to his daughter and further find that he demonstrated sufficient parental responsibility as to establish his right to "veto" the adoption.

However, it was improper for the Surrogate to address the question of the child's best interests, since that issue was beyond the scope of the trial.

Furthermore, it must be stated that, contrary to the father's contentions on appeal, the question of custody cannot be resolved by this court. Firstly, since the father did not take an appeal from any part of the decree and the appellants have not appealed from the provision of the decree which remits the question of the custody to the Family Court, Kings County, that issue is not properly before this court on appeal. In any event, the custody issue could not be resolved upon the record before us. Further proceedings are necessary, including an inquiry into whether there exist any "extraordinary circumstances" which would permit an inquiry into the question of what custody arrangement would be in the child's best interests *(see, Matter of Bennett v Jeffreys,* 40 NY2d 543). Sullivan, J. P., Miller, O'Brien and Ritter, JJ., concur.