■ In the Matter of KAILEE CC., an Infant. DONNA DD. et al., Respondents; LOUIS EE., Appellant. (And Two Other Related Proceedings.)—Weiss, J.

In April 1988, an 18-year-old high school senior (hereinafter the biological mother) learned that she was approximately six months pregnant. She immediately informed her mother and respondent, her 23-year-old boyfriend. She dismissed respondent's suggestion to have an abortion and decided instead that the baby would be placed for adoption upon birth. The biological mother never wavered from this decision of which respondent was at all times aware. Respondent was subsequently asked to vacate temporary sleeping quarters that he occupied in the rear of a store owned by the biological grandfather. He did so in early May 1988 and then quit his job; for the next six months respondent virtually became a street person without any address or employment, finding lodging with friends on a day-to-day basis. His relationship and contact with the biological mother deteriorated.

The biological mother received counseling and on May 5, 1988 retained counsel to assist with the proposed adoption. She gave respondent her attorney's card to facilitate contact. On May 25, 1988 the biological mother went to a downstate home for unwed mothers and, thereafter, her only contact with respondent was a short telephone conversation in which the baby was not discussed. The infant was born on July 23, 1988 and surrendered to petitioners, the adoptive parents, at the hospital on July 26, 1988. The biological grandmother had contact with respondent in June 1988 regarding the adoption and again in mid-August 1988 concerning his medical history. She subsequently provided him with the name, address and phone number of the lawyer handling the adoption and informed respondent of the birth of the baby girl.

In October 1988, respondent informed his parents of the birth and, with their encouragement, took steps to locate the child. He contacted the biological grandmother for informa-

tion about the attorney, whom he then called on October 31, 1988. In November 1988, respondent filed paternity and custody petitions in Westchester County which were subsequently dismissed for lack of service on the biological mother and because respondent failed to appear in court.

The instant petition for adoption was filed in Rensselaer County on November 9, 1988. Because respondent had contacted the biological mother's attorney, Family Court directed that he be notified of the proceeding. Following a hearing, the court concluded that respondent had failed to satisfy each of the three criteria set forth in Domestic Relations Law § 111 (1) (e) and determined that his consent to the adoption was not necessary. Respondent has appealed.

Respondent initially contends that because Domestic Relations Law § 111 (1) (e) has been declared unconstitutional (see, Matter of Raquel Marie X., 76 NY2d 387, cert denied sub nom. Robert C. v Miguel T., — US —, 111 S Ct 517), the order must be reversed. We disagree. The Court of Appeals delineated interim criteria to be applied in paternity cases pending the enactment of new legislation (supra, at 408) to enable courts to determine whether the biological father's consent to an adoption is required. We find the record of the adoption proceeding before Family Court together with that court's decision sufficient to enable this court to apply the interim standards and to determine whether respondent's consent to the adoption was required (see, Matter of Raquel Marie X., 173 AD2d 709; Matter of Stephen C., 170 AD2d 1035; Matter of Kiran Chandini S., 166 AD2d 599; Matter of John E. v Doe, 164 AD2d 375, lv denied 78 NY2d 853).

Bearing in mind a child's need for early permanence and stability, the key to the unwed biological father's constitutional right to consent to the adoption is the prompt assertion of his interest and a manifestation of his ability and willingness to assume custody of the child (Matter of Raquel Marie X., 76 NY2d 387, 402, supra). This record shows that upon learning of the mother's pregnancy, respondent quit his employment, left his place of lodging and became essentially a street person. When the biological mother rejected his suggested abortion, he acceded to her plans for an adoption and was content to leave the details to her and her family. He avoided the biological mother's attorney despite her repeated requests that he make contact. Respondent never expressed an objection to, or interest in, the adoption plans nor did he manifest any interest in the child during the critical period prior to birth and placement (see, supra, at 403). Even if

Family Court had credited rather than rejected the testimony suggesting that respondent told several friends that he was responsible for the pregnancy and desired involvement in the child's life, the court correctly noted that "[h]is actions, or more importantly, his lack of action, speak louder than his words".

Nothing in respondent's lifestyle after his estrangement from the biological mother suggests that he had any desire to discontinue the use of drugs which had consumed most of his and a portion of the biological mother's income. He manifested no provision in his life for a child, much less a willingness or ability to assume full custody of the baby or any other responsibility or duty related to the child (see, supra, at 402). He failed to make even the most rudimentary inquiry preliminary to any sort of parental tie, particularly during the critical months prior to the July 26, 1988 placement of the child for adoption. Respondent also failed to avail himself of any mechanism, legal or otherwise, to timely protect his right to establish a legal and emotional bond with the child (see, supra, at 402). Under the circumstances found here, respondent's consent to the adoption was not necessary.

Levine, Mercure, Mahoney and Harvey, JJ., concur. Ordered that the order is affirmed, without costs.