FOURTH DEPARTMENT, MAY, 2001

(May 2, 2001)

■ In the Matter of LILY R., an Infant. FAMILY TREE ADOPTION AGENCY, INC., Petitioner; JONATHAN K., Respondent, and GARY S. et al., Intervenors-Appellants. [724 NYS2d 231] —Order unanimously reversed on the law without costs, motion granted and petition dismissed in accordance with the following Memorandum: Family Court erred in determining, *sua sponte,* that a foster care review was statutorily mandated with respect to the child Lily, in strongly urging petitioner, Family Tree Adoption Agency, Inc. (Agency), to file a petition for foster care review pursuant to Social Services Law § 392, and in denying the motion of the intervenors, the proposed adoptive parents, to dismiss the foster care review petition.

On December 14, 1998, when Lily was two days old, her mother executed three documents. First, she signed a voluntary placement agreement pursuant to Social Services Law § 384-a requesting that the Agency accept the care and custody of Lily and stating that she had selected the intervenors, who were clients of the Agency, to be adoptive parents. Second, she signed an extra-judicial surrender for an agency adoption, in which she surrendered Lily to the Agency for adoption, conditioned upon the placement of Lily with the intervenors, and their eventual adoption of her. In the surrender she declined to identify Lily's father. Third, the mother gave the Agency an affidavit naming respondent as the father and setting forth his address but stating that he was not entitled to notice of the adoption pursuant to Domestic Relations Law § 111-a. Lily has lived with the intervenors since that day.

The intervenors filed a petition for adoption on January 22, 1999 and, at the initial court hearing on February 11, the court requested information about the father. The verified schedule for adoption filed by the Agency dated March 3, 1999 identified respondent as a father entitled to notice but one whose consent to the adoption was not required. In April an order notifying respondent of the adoption proceeding was executed by the court and sent to the Agency for service. The court also determined that the extra-judicial surrender had not been

witnessed properly and recommended that the mother execute a judicial surrender. That was done in Cattaraugus County on July 13, 1999.

For reasons unexplained in the record, respondent, who lives in Pennsylvania, was not served with notice of the adoption until September 30, 1999. When he appeared in court for the first time on October 22, the only other persons present were the intervenors, their attorney and the Law Guardian. The court informed respondent that Lily was in foster care and had been placed with adoptive parents at the request of the birth mother, and that the adoptive parents wished to adopt the child. The court also noted that the attorneys for the Agency and the mother would be notified that respondent had appeared and that, because Lily was in foster care, the Agency had potential responsibilities to respondent, including providing assistance to him to "unify with" the child. The court added that the mother had to be notified that the adoption was not going forward at that time. It is unclear what the court meant when it stated that the adoption was not going forward at that time. It would appear that the next issue to be determined in the adoption proceeding was whether respondent's consent was required.

By March 2000 a filiation order had been entered on consent, and the court had pending before it the adoption petition and a petition by the Agency to terminate respondent's parental rights (TPR) pursuant to Social Services Law § 384-b. The court ruled at that time that the intervenors were not parties to the TPR proceeding because they were not foster parents. The court stated that the TPR petition would have to be addressed before the adoption could proceed and that a foster care review under Social Services Law § 392 might be required, although Lily was not formally in foster care and had been in an adoptive placement for over a year.

Respondent filed a custody petition on April 25, 2000 and, at the next court hearing, on May 4, 2000, the court stated that a foster care review was mandated by Social Services Law § 392 (2) but that the court could not proceed without a petition seeking that review. It opined that the foster care review should occur before any of the pending petitions were addressed.

At the court's urging, the Agency filed a foster care review petition pursuant to Social Services Law § 392 dated May 22, 2000, and a hearing was scheduled for June 19, 2000. After discussion of the pending TPR petition, the Agency attorney suggested that all parties would benefit from a hearing pursu-

ant to *Matter of Raquel Marie X.* (76 NY2d 387, *cert denied sub nom. Robert C. v Miguel T.,* 498 US 984). The court stated that *Raquel Marie X.* applied to adoption petitions, not TPR petitions, and that respondent's rights as an adjudicated father of a child in foster care could be terminated only in a TPR proceeding under Social Services Law § 384-b.

The intervenors moved to dismiss the foster care review petition based on, *inter alia,* lack of subject matter jurisdiction because Lily had been freed for adoption, an adoption petition had been filed within 12 months of placement, and respondent had the opportunity to contest the adoption in a *Raquel Marie X.* hearing. The Agency sought to withdraw the foster care review petition. The court denied the intervenors' motion, stating that this was a foster care case and rejecting the contention that it was an adoption case. It also denied as untimely the Agency's request to withdraw the petition.

The court erred in denying the intervenors' motion. Lily was surrendered for adoption pursuant to Social Services Law § 383-c, which applies to children in foster care. Subdivision (1) (c) provides for the surrender of a child born out of wedlock "by the mother of such child, and by the father of such child, if such father's consent would be required for the child's adoption, pursuant to [Domestic Relations Law § 111]." Thus, the need for the father's consent must be determined under Domestic Relations Law § 111. The criteria applicable when a child is under six months old when placed for adoption are set forth in Domestic Relations Law § 111 (1) (e). That section was declared unconstitutional in *Matter of Raquel Marie X.* (*supra,* at 407) and interim criteria that remain applicable were set forth. The unwed father does not have an automatic right to veto an adoption but must "assert his interest promptly * * * [and] must manifest his ability and willingness to assume custody of the child" (*Matter of Raquel Marie X., supra,* at 402). Thus, "a father who has promptly taken every available avenue to demonstrate that he is willing and able to enter into the fullest possible relationship with his under-six-month-old child should have an equally fully protected interest in preventing termination of the relationship by strangers" (*Matter of Raquel Marie X., supra,* at 403). The crucial period for measuring the father's "manifestation of responsibility is * * * the six continuing months immediately preceding the child's placement for adoption" (*Matter of Raquel Marie X., supra,* at 408).

Pursuant to Social Services Law § 392 (1) (a), the term "foster care" includes care provided to children freed for adoption and placed in a prospective adoptive home and for whom no

petition for adoption has been filed within 12 months of place-
ment. In this case, that section is inapplicable because Lily
was freed for adoption subject to the rights of respondent under
*Raquel Marie X.,* she was placed in a prospective adoptive
home, and a petition for adoption had been filed well within
the 12-month period. It appears that the scenario now before
us could have been avoided had the court properly informed re-
spondent at his initial court appearance in response to notice
of the pending adoption that his right to contest the adoption
would be determined in a *Raquel Marie X.* hearing rather than
advising him that Lily was in foster care and that the Agency
had a duty to help him to unify with Lily.

We reject the court's belated attempt to make *Raquel Marie
X.* findings in the context of the foster care review. At a *Raquel
Marie X.* hearing, the burden of proof would be on respondent
to prove that he manifested responsibility in the six months
before Lily's placement. At the foster care review hearing, the
burden was on the Agency to prove that Lily needed to remain
in foster care at that time. Thus, the issues, the parties, and
the burdens of proof are different at the two hearings.

The court was obviously concerned that respondent's opposi-
tion to the adoption was known to the mother, her attorney,
and the Agency before the relevant documents were executed
on December 14, 1998 and that they attempted to avoid afford-
ing respondent the opportunity to object to the adoption. The
court properly ordered that he be given notice. The purpose of
the notice, however, was to give him an opportunity to seek a
*Raquel Marie X.* hearing.

Therefore, we reverse the order, grant the motion of the
intervenors and dismiss the petition for foster care review.
Further proceedings concerning this child shall be held before
another Judge. (Appeal from Order of Monroe County Family
Court, Kohout, J.—Adoption.) Present—Green, J. P., Pine,
Hayes, Wisner and Scudder, JJ.