■ In the Matter of the Adoption of MATTHEW D., an Infant. JOHN DOE et al., Appellants; KARA D., Appellant; TERRENCIO E., Respondent. ADOPTION S.T.A.R., INC., Appellant. [818 NYS2d 399]—

Appeals from an order of the Surrogate's Court, Erie County (Barbara Howe, S.), entered January 5, 2006 in an adoption proceeding. The order confirmed the report of the Referee and dismissed the petition.

It is hereby ordered that the order so appealed from be and the same hereby is affirmed without costs.

Memorandum: Petitioners commenced this proceeding seeking to adopt Matthew, a child born out of wedlock on December 25, 2003. One day after his birth, his mother surrendered him to Adoption S.T.A.R., Inc. (agency) an authorized agency (*see* Social Services Law § 384), and the agency placed him with petitioners on December 27, 2003. Pursuant to SCPA 506 and with the consent of the parties, Surrogate's Court appointed a referee to report on the issues whether the biological father was entitled to notice of the adoption proceeding (*see* Domestic Relations Law § 111-a) and whether his consent to the adoption was required. Following a hearing, the Referee found both that notice to the biological father was required and that his consent to the adoption was required.

The Surrogate properly confirmed the Referee's report and dismissed the adoption petition. The Surrogate found that the credible evidence established that the biological father timely manifested his willingness and ability to raise the child. There is no basis in the record for disturbing the Surrogate's resolution of issues of credibility (*see Matter of Jenny-Beth L. v Bryan C.W.*, 23 AD3d 1069 [2005]), and we conclude that the Surrogate's determination is supported by the record (*see Matter of Ashton*, 254 AD2d 773 [1998], *lv denied* 92 NY2d 817 [1998]). The record supports the Surrogate's determination that the biological father "did everything possible to manifest and establish his parental responsibility" under the circumstances (*Matter of Raquel Marie X.*, 76 NY2d 387, 409 [1990], *cert denied sub nom. Robert C. v Miguel T.*, 498 US 984 [1990]). He publicly acknowledged his paternity from the outset of the pregnancy (*see id.* at 408) and, although he did not pay any expenses in connection with the pregnancy or the birth, the biological mother testified that all of those expenses were covered by Medicaid and that she did not request or need his financial assistance (*see Matter of Kiran Chandini S.*, 166 AD2d 599, 601 [1990]). With respect to the steps taken by the biological father to establish his legal responsibility for the child (*see Raquel Marie X.*, 76 NY2d at 408), we note that he commenced a proceeding to establish his paternity prior to the child's birth (*see* Family Ct Act § 517) and a proceeding seeking custody of the child (*see* § 651 [b]). Although the biological father initiated the latter proceeding beyond the six-month period immediately preceding the child's placement (*see Matter of Robert O. v Russell K.*, 80 NY2d 254, 264 [1992]; *Raquel Marie X.*, 76 NY2d at 408), his action nevertheless evinces his commitment to undertaking his

parental responsibility. Other factors evincing that commitment include the repeatedly expressed willingness and desire of the biological father to raise the child, coupled with his efforts to ensure that he had a support system in place if the biological mother chose not to raise the child with him. Finally, the record supports the Surrogate's findings that the biological father reasonably and sincerely believed that the biological mother would not surrender the child for adoption (*see Kiran Chandini S.*, 166 AD2d at 601), and that she frustrated his efforts to become involved with the child. The biological mother admitted that she never told the biological father that she intended to place the child for adoption because she knew that he would attempt to prevent her from doing so, and she decided to deliver the child at a hospital where the biological father would be unlikely to find her and assert his parental rights (*see id.*; *see generally Matter of Baby Girl S.*, 141 Misc 2d 905 [1988], *affd* 150 AD2d 993 [1989], *affd* 76 NY2d 387 [1990]).

All concur except Kehoe and Smith, JJ., who dissent and vote to reverse in accordance with the following memorandum.

Kehoe and Smith, JJ. (dissenting). We respectfully dissent. We conclude that Surrogate's Court erred in determining that the biological father took sufficient action in the six months preceding the placement of the child for adoption to require his consent to the adoption (*see Matter of Michael D.D.S.*, 24 AD3d 680, 681 [2005]; *Matter of Baby Girl U.*, 224 AD2d 869, 869-870 [1996], *lv denied* 88 NY2d 810 [1996]; *Matter of Jarrett*, 224 AD2d 1029, 1031-1032 [1996], *lv dismissed* 88 NY2d 960 [1996]; *see generally Matter of Robert O. v Russell K.*, 80 NY2d 254, 262-266 [1992]; *Matter of Raquel Marie X.*, 76 NY2d 387, 403-409 [1990], *cert denied sub nom. Robert C. v Miguel T.*, 498 US 984 [1990]). We particularly see no basis for a determination that, during the six-month period in question, the biological father took "every available avenue" and availed himself of "all the possible mechanisms" in order to demonstrate that he was both "willing and able" to enter into the "fullest possible relationship" with the child upon his birth (*Raquel Marie X.*, 76 NY2d at 402-403). The record establishes that, except for his purchase of baby items in the amount of $156.04 and his filing of a paternity petition, the biological father took no action during the six-month period to indicate any custodial intent on his part. Such token financial support is insufficient to manifest custodial intent (*see Matter of Raymond AA. v Doe*, 217 AD2d 757, 761 [1995], *lv denied* 87 NY2d 805 [1995]; *Matter of Raquel Marie X.*, 173 AD2d 709, 712-713 [1991]; *Matter of John E. v Doe*, 164 AD2d 375, 378-380 [1990], *lv denied* 78 NY2d 853

[1991]). Moreover, the biological father's paternity petition did not contain a request for custody. We note in addition that the biological father did not seek legal custody of the child until approximately one month after the child's placement for adoption, and the majority thus inappropriately relies on the biological father's commencement of that custody proceeding as support for its decision (*see Robert O.*, 80 NY2d at 264; *Raquel Marie X.*, 76 NY2d at 408). Prior to the child's placement for adoption, the biological father did not file with the putative father registry, did not arrange to have himself named on the child's birth certificate, did not place the child on his medical insurance, never accompanied the child's mother to any of her visits to the doctor, and did not attend or seek to attend the birth. We further note that, although employed throughout the six-month period, the biological father did not pay any support to the mother nor did he contribute anything toward the medical expenses of the mother or the child. Under the circumstances, the evidence fails to demonstrate the biological father's willingness to take full parental responsibility for the child.

Moreover, there was a complete absence of evidence demonstrating the biological father's ability and readiness to assume full custody upon the birth of the child and at the time of placement. Throughout the relevant period and, indeed, until the time of the hearing, the biological father lived in an apartment that he himself characterized as six flights up and too small, too dangerously located, and otherwise unfit for an infant. In addition, the biological father had no baby furnishings in the apartment. Further, the biological father took no steps in furtherance of his plan to move back to his mother's home and to raise the child there with his mother's assistance.

Under the circumstances of this case, it simply cannot be said that the biological father did "everything possible to manifest and establish his parental responsibility" (*Raquel Marie X.*, 76 NY2d at 409). The Court of Appeals has rejected the notion that the biological mother or the adoption agency is affirmatively obligated to facilitate the efforts of the biological father to demonstrate his willingness to take on parental responsibilities (*see generally Robert O.*, 80 NY2d at 265-266) and, in this case, "it cannot be said that there was such active concealment as would excuse the failure of [the biological father] to assert his parental interest in time" (*Jarrett*, 224 AD2d at 1032; *see generally Robert O.*, 80 NY2d at 259-266). We therefore would reverse the order, grant the motion of petitioners and Adoption S.T.A.R., Inc. and the motion of the biological mother to reject the Referee's report, reinstate the adoption petition and remit the matter to

Surrogate's Court for further proceedings on the petition. Present—Pigott, Jr., P.J., Hurlbutt, Kehoe, Smith and Green, JJ.