## State of New York
## Supreme Court, Appellate Division
## Third Judicial Department

Decided and Entered:    April 2, 2015                    520082
_____

In the Matter of the Adoption
    of ISABELLA TT., an Infant.

DALTON C. et al.,
                    Appellants;

BRANDON A. et al.,
                    Respondents.

FRIENDS IN ADOPTION, INC.,
                    Appellant.

(Proceeding No 1.)
_____        MEMORANDUM AND ORDER

In the Matter of BRANDON A.,
                    Respondent,

        v

MELISSA TT.,
                    Respondent,

        and

FRIENDS IN ADOPTION, INC.,
                    Appellant.

DALTON C. et al.,
                    Appellants.

(Proceeding No. 2.)
_____


Calendar Date:   February 20, 2015

Before:   Lahtinen, J.P., Garry, Rose and Devine, JJ.

                        _____

Sullivan Keenan Oliver & Violando, LLP, Albany (Michael D. Violando of counsel), for Friends in Adoption, Inc., appellant.

Mary Walsh Snyder, Loudonville, for Dalton C. and another, appellants.

William V. O'Leary, Albany, for Brandon A., respondent.

Michelle I. Rosien, Philmont, for Melissa TT., respondent.

Carol R. Stiglmeier, Albany, attorney for the child.

_____

Lahtinen, J.P.

Appeals (1) from an order of the Family Court of Albany County (Kushner, J.), entered November 20, 2014, which dismissed petitioners' application, in proceeding No. 1 pursuant to Domestic Relations Law article 7, for the adoption of Isabella TT., (2) from an order of said court, entered November 20, 2014, which granted petitioner's application, in proceeding No. 2 pursuant to Family Ct Act article 6, for custody of Isabella TT., and (3) from an order of said court, entered November 20, 2014, which, in proceeding No. 1 pursuant to Domestic Relations Law article 7, directed petitioners to turn Isabella TT. over to respondent Brandon A.

From the summer of 2013 until mid-February 2014, respondent Melissa TT. (hereinafter the mother) and Brandon A. (hereinafter the father) resided together in South Carolina, where the father paid almost all their living expenses.[1] By March 2014, the mother had relocated to New York City. When seeking to renew her birth control pills prescription on March 19, 2014, she first found out — reportedly to her shock — that she was pregnant. She

_____

[1] Given the absence from the record of a transcript of the hearing, we accept Family Court's facts, which include credibility determinations.

was advised that she was in her 35th week of pregnancy and was referred to respondent Friends in Adoption, Inc. (hereinafter FIA).  Although the mother informed FIA about the father, FIA made minimal efforts to contact him (sending a letter to an address where he had never lived) and allegedly told the mother that the adoption process would go more smoothly if she did not identify the father.

The child was born April 21, 2014 and the mother executed an extrajudicial surrender on April 23, 2014 in which she declined to identify the father.  The child was placed by FIA with petitioners Dean B. and Dalton C. (hereinafter the adoptive parents) on April 23, 2014.  On May 6, 2014, the mother disclosed for the first time to the father that she had been pregnant and given birth to a child of whom he was the father.  On May 11, 2014, the mother informed FIA that she wished to revoke her surrender of the child, but FIA refused to return the child.  In late May 2014, the adoptive parents commenced proceeding No. 1 seeking approval of the child's adoption.  On July 22, 2014, the father pro se brought a paternity proceeding[2] seeking to be adjudicated as the father of the child and, shortly thereafter, he pro se commenced proceeding No. 2 seeking custody of the child.

Upon the application of FIA and the adoptive parents, Family Court conducted a hearing as to whether the father's consent was required for the adoption (see Domestic Relations Law § 111 [1]; Matter of Raquel Marie X., 76 NY2d 387 [1990], cert denied 498 US 984 [1990]).  The court rendered a detailed written decision setting forth numerous factual findings and concluding that the father's consent was necessary.  Family Court's order regarding the father's consent (hereinafter referred to as the adoption-consent order) was entered on November 20, 2014 and, on that same day, a second order was entered granting the father legal and physical custody and a third order directed the adoptive parents to turn the child over to the father.  FIA and

_____

[2]  By order entered September 26, 2014, the father's paternity petition was resolved by declaring him to be the biological father of Isabella TT.

the adoptive parents appeal.[3]

Initially, we note that, in light of the obvious urgency and compelling emotional implications for the parties, we issued an expedited scheduling order for this appeal when we denied FIA's motion for a stay (see 2014 NY Slip Op 91204[U]).  Perhaps because of such urgency, there are some apparent errors in the notice of appeal and record.  Further, although the adoption-consent order was entered November 20, 2014, a final order dismissing the adoption petition was thereafter entered on December 12, 2014, and review of the intermediate order should occur in the appeal from the final order (see Hamilton v Murphy, 79 AD3d 1210, 1211, n [2010], lv dismissed 16 NY3d 794 [2011]).  However, "[t]his Court has the discretion to treat a notice of appeal as valid despite the notice being premature or containing an inaccurate description of the order being appealed" (Matter of Fifield v Whiting, 118 AD3d 1072, 1073 [2014]).  FIA and the adoptive parents, who have filed a notice of appeal from the December 12, 2014 order, urge us to exercise our discretion and review the merits of their appeal from the adoption-consent order.  Under the circumstances, we will treat the notice of appeal as validly bringing before us the merits of the adoption-consent order.

Next, we consider the argument of the mother and attorney for the child that the appeals should be dismissed since the record does not contain the transcript of the evidentiary hearing on the consent issue, apparently because the recording was of such a poor quality.  The failure to compile a proper record can result in dismissal of an appeal (see Matter of Pratt v Anthony, 30 AD3d 708, 708 [2006]; Personnel Sys. Intl. v Clifford R. Gray, Inc., 146 AD2d 831, 832 [1989]).  However, FIA states in its brief that it does not contest the factual findings set forth in Family Court's decision and contend that, even accepting all those factual findings, Family Court's legal analysis was flawed.  The father has not indicated that his position will be prejudiced by the absence of a transcript, and he agrees that Family Court's

_____

[3]  Although the adoptive parents did not submit a separate brief, they stated in a letter that they agreed with FIA's brief.

factual findings are uncontested.  Accordingly, we will consider the merits of FIA and the adoptive parents' challenge to the adoption-consent order (cf. Personnel Sys. Intl. v Clifford R. Gray, Inc., 146 AD2d at 832).

"The father of a child born out-of-wedlock is entitled to full protection of his relationship with the child, including the right to deny consent to an adoption at birth by strangers, only if he 'assert[s] his interest promptly . . . [and] manifest[s] his ability and willingness to assume custody of the child'" (Matter of Gionna L., 33 AD3d 1168, 1168 [2006], lv denied 8 NY3d 802 [2007], quoting Matter of Raquel Marie X., 76 NY2d at 402 [citation omitted]).  Evaluation of the father's conduct includes, among other things, factors such as "his public acknowledgment of paternity, payment of pregnancy and birth expenses, steps taken to establish legal responsibility for the child, and other factors evincing a commitment to the child" (Matter of Russell R. v Friends In Adoption, Inc., 64 AD3d 912, 913 [2009], lv denied 13 NY3d 710 [2009] [internal quotation marks and citation omitted]; accord Matter of Seasia D., 10 NY3d 879, 880 [2008], cert denied 555 US 1046 [2008]; Matter of Gionna L., 33 AD3d at 1168-1169).  Family Court's many factual findings included that: the father had paid up to 90% of the household expenses when the mother resided with him; the mother was not visibly pregnant while living with him; the mother did not know she was pregnant until she had moved to New York City; FIA made no reasonable effort to notify the father; the father was first notified about the pregnancy and child on May 6, 2014; he was unable to contribute to pregnancy expenses through no fault of his own because he had no knowledge thereof; the mother was urged by FIA to decline to identify the father of her child; and, once the father became aware of the child, he filed a paternity petition within about 10 weeks and then a custody petition and he did so despite difficult logistics regarding filing (he lived in South Carolina, the child had been born in New York City, the adoption was pending in Albany County), as well as a lack of legal representation by counsel.  The father submitted an affidavit stating that, after learning of some uncovered costs of the birth, he was making arrangements to pay those costs.  He had a job and residence, and was able to take immediate custody of the child.  In light of the uncontested facts found by Family

Court, as well as the other relevant proof in the record, we are unpersuaded that Family Court erred in determining that the father adequately preserved his right to contest the adoption of his child (see Matter of Matthew D., 31 AD3d 1103, 1104-1105 [2006], appeal dismissed 7 NY3d 837 [2006]).

The remaining arguments have been considered and are unavailing.

Garry, Rose and Devine, JJ., concur.

ORDERED that the orders are affirmed, without costs.

ENTER:

Robert D. Mayberger
Clerk of the Court