■ In the Matter of HUDSON LL., an Infant. MEREDITH LL. et al., Respondents; MATTHEW MM., Appellant. [59 NYS3d 176]—

Mulvey, J. Appeal from an order of the Surrogate's Court of Clinton County (Ryan, S.), entered April 25, 2016, which granted petitioners' application, in a proceeding pursuant to Domestic Relations Law article 7, to determine that respondent's consent was not required for the adoption of the child.

Respondent (hereinafter the father) is the biological father of a son (born in 2015) who was born while the father was incarcerated in state prison. The mother surrendered the child at the hospital after birth and she and her husband signed an extrajudicial consent to the adoption by petitioners, the mother's cousin and her spouse. Within a few days of the child's birth, petitioners, who have been the child's caretakers and guardians since his birth, filed this adoption proceeding in which they requested that Surrogate's Court dispense with the father's consent. Following a hearing at which only the father testified, the court granted petitioners' request. The father appeals.

We affirm. Whether an unwed father is required to consent to an adoption is determined by "his manifestation of parental

responsibility [and,] [i]n the case of newborn infants[,] . . . the qualifying interest of an unwed father requires a willingness himself to assume full custody of the child—not merely to block adoption by others" (*Matter of Raquel Marie X.*, 76 NY2d 387, 408 [1990], *cert denied* 498 US 984 [1990]). "[T]he manifestation of parental responsibility must be prompt" and such a manifestation of the ability and willingness to assume custody is measured in the "six continuing months immediately preceding the child's placement for adoption" (*id.*; *see Matter of Seasia D.*, 10 NY3d 879, 880 [2008], *cert denied* 555 US 1046 [2008]; *Matter of Russell R. v Friends In Adoption, Inc.*, 64 AD3d 912, 912-913 [2009], *lv denied* 13 NY3d 710 [2009]). Our "evaluation of the unwed father's conduct in this key period may include such considerations as his public acknowledgment of paternity, payment of pregnancy and birth expenses, steps taken to establish legal responsibility for the child, and other factors evincing a commitment to the child" (*Matter of Raquel Marie X.*, 76 NY2d at 408; *see Matter of Seasia D.*, 10 NY3d at 880; *Matter of Isabella TT. [Dalton C.]*, 127 AD3d 1330, 1332 [2015], *lv denied* 25 NY3d 913 [2015]).

Here, the child was conceived during a liaison between the father and the mother in the summer of 2014, and the father became aware of the pregnancy in September 2014. At that time, he had criminal charges pending against him and was out of jail on a pretrial release program. In November 2014, the father was again arrested, entered a guilty plea and was sentenced to 30 days in jail. After his release in December 2014, the father again violated the conditions of the pretrial release and was incarcerated in February 2015 until he was sentenced in July 2015 to felony probation. In September 2015, while on probation and after the child's June 2015 birth, the father was charged with another crime, his probation was revoked and he was resentenced to a term of 1⅓ to 4 years in prison, and he remains incarcerated.

Although the father acknowledged paternity, he did not take steps to assume custody or evince a commitment to the child.[1] The father testified that he had attended a few prenatal doctor visits with the mother, purchased some prenatal vitamins and gave the mother a few hundred dollars for rent and other expenses. Notably, the foregoing gestures of financial help ceased before his arrest in November 2014, well outside of the key period with which we are concerned. As of the time of the hearing, the father had not paid any of the birth expenses and, while he was incarcerated during much of the relevant period,

---

1. In December 2015, an order of filiation was entered.

he had no contact with the mother and offered no proof that he had "insufficient income or resources to provide some measure of [financial] support" toward the mother's pregnancy and birth expenses (*Matter of Maurice N. [Carlos O.]*, 128 AD3d 1117, 1118 [2015]).

According to the father's testimony, his plan was to take the child from petitioners and place him in foster care with the Department of Social Services to be cared for pending his release from prison. His testimony was not clear as to when he developed this plan and whether he did so during the relevant period. Upon his release, the father planned to assume custody, find a job and move in with a friend. Since the father had no local support network, his plan included using public transportation and relying on friends for rides and child care. The father did not have a driver's license due to at least one of his previous convictions, and he had no actual job prospects, as the timing of his release from prison was uncertain. Other than his own assertions, the father offered no credible testimony that he had a viable plan for the care of the child or willingness or ability to promptly assume custody of the child, given his incarceration and lack of resources. We also note that the father failed to offer any testimony regarding a plan for temporary guardianship pending his release from prison (*see Matter of Baby Girl S.*, 208 AD2d 930, 931 [1994]).[2]

Upon review of the record, we agree with Surrogate's Court that the father failed to demonstrate that he took any meaningful steps in the six months preceding the child's birth and placement for adoption consistent with his willingness to assume full custody of the child. On the contrary, his testimony showed that, after he learned of the mother's pregnancy, his behavior was alarmingly inconsistent with preparing for his role as a parent. While on pretrial release, he was arrested and sentenced for another crime.[3] After serving his sentence, he again violated the conditions of his pretrial release, resulting in his incarceration during the mother's pregnancy. After a scant six weeks on probation, he violated his probation by committing another crime. As the father admitted at the hearing, his criminal acts were often related to his abuse of alcohol. On our review of the record, we find that the father failed to offer any appropriate placement for the child while he was incarcer-

2. Petitioners were granted temporary guardianship in June 2015, pending the determination of their petition for adoption.

3. Although the crime and arrest were more than six months removed from the child's birth, the father's sentence was served within at least some of that time period.

ated, and he has not otherwise shown any realistic commitment to assume custody (*see Matter of Maurice N. [Carlos O.]*, 128 AD3d at 1118). According due deference to the credibility determinations of Surrogate's Court (*see Matter of John Q. v Erica R.*, 104 AD3d 1097, 1099 [2013]), the record before us supports that court's conclusion that the father failed to prove the elements necessary to require his consent and, therefore, his consent was not required (*see Matter of Maurice N. [Carlos O.]*, 128 AD3d at 1118; *Matter of Gionna L.*, 33 AD3d 1168, 1169 [2006], *lv denied* 8 NY3d 802 [2007]).

Peters, P.J., Garry, Egan Jr. and Rose, JJ., concur. Ordered that the order is affirmed, without costs.