Matter of William (2022 NY Slip Op 03831)

Matter of William

2022 NY Slip Op 03831

Decided on June 10, 2022

Appellate Division, Fourth Department

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and subject to revision before publication in the Official Reports.

Decided on June 10, 2022
SUPREME COURT OF THE STATE OF NEW YORK
Appellate Division, Fourth Judicial Department

PRESENT: SMITH, J.P., CENTRA, LINDLEY, AND CURRAN, JJ.

396 CAF 21-00834

[*1]IN THE MATTER OF THE ADOPTION OF WILLIAM  JONATHAN A.H. AND ELEANOR T.H., PETITIONERS-APPELLANTS; AMANDA Y.D. AND DOUGLAS W.M., RESPONDENTS-RESPONDENTS. (APPEAL NO. 1.)

D.J. & J.A. CIRANDO, PLLC, SYRACUSE (JOHN A. CIRANDO OF COUNSEL), FOR PETITIONERS-APPELLANTS.
PAUL B. WATKINS, FAIRPORT, FOR RESPONDENT-RESPONDENT DOUGLAS W.M. 
KIMBERLY A. WOOD, WATERTOWN, ATTORNEY FOR THE CHILD. 

 Appeal from an order of the Family Court, Jefferson County (Eugene J. Langone, Jr., J.), entered April 30, 2021. The order, inter alia, dismissed the amended petition for adoption. 
It is hereby ORDERED that the order so appealed from is affirmed without costs.
Memorandum: In appeal No. 1, petitioners-respondents Jonathan A.H. and Eleanor T.H. (petitioners) appeal from an order that determined that the consent of respondent-petitioner Douglas W.M. (father) is required for the adoption of William, his biological son (see generally Domestic Relations Law § 111). In appeal No. 2, petitioners appeal from an order that awarded custody of the child to the father, and in appeal No. 3, petitioners appeal from an order that dismissed their custody petition.
Contrary to petitioners' contention in these consolidated appeals, there is a sound and substantial basis to support the determination of Family Court that the father demonstrated "his willingness to take parental responsibility" (Matter of Raquel Marie X., 76 NY2d 387, 402 [1990], cert denied 498 US 984 [1990]). "[A] father who has promptly taken every available avenue to demonstrate that he is willing and able to enter into the fullest possible relationship with his under-six-month-old child should have an equally fully protected interest in preventing termination of the relationship by strangers, even if he has not as yet actually been able to form that relationship" (id. at 403).
Here, the father " 'did everything possible to manifest and establish his parental responsibility' under the circumstances . . . He publicly acknowledged his paternity from the outset of the pregnancy . . . , and, although he did not pay any expenses in connection with the pregnancy or the birth," he testified that all of those expenses were paid by the military (Matter of Matthew D., 31 AD3d 1103, 1104 [4th Dept 2006], lv dismissed 7 NY3d 837 [2006], quoting Raquel Marie X., 76 NY2d at 409). Moreover, prior to the child's birth, the father pursued paternity testing and requested and received from the mother a commitment that he could have custody of the child, and actively began purchasing "items" in anticipation of obtaining custody of the child upon birth. Based on the mother's commitment, the father enlisted the help of his military commanding officers to obtain custody of his child (see Matthew D., 31 AD3d at 1104), and made plans for relatives or family friends to help care for the child until his enlistment in the military ended.
We thus respectfully disagree with our dissenting colleague and conclude that the father [*2]established his ability to assume custody of the child. Contrary to the position of the dissent and petitioners, custody and housing are separate and distinct concepts. A parent who lacks housing for a child is not legally precluded from obtaining custody. Certainly, active military members should not lose custody of a child due to their service to our country. Many parents enlist the aid of family members to help them provide housing, including single parents who serve in the military. That temporary inability to provide housing should not preclude them from asserting their custodial rights to the children where, as here, they have established their intent to embrace their parental responsibility.
Here, as in Matthew D., the record supports the court's findings that the father "reasonably and sincerely believed that the biological mother would not surrender the child for adoption . . . , and that she frustrated his efforts to become involved with the child" (Matthew D., 31 AD3d at 1105; see Matter of Kiran Chandini S., 166 AD2d 599, 601 [2d Dept 1990]). The evidence at the hearing established that the mother lied to the father, telling him that she would give him custody of the child; misled petitioners into believing that the father did not want the child, even though she knew that he was aggressively pursuing custody; and misled the courts by filing a false affidavit stating that no one was holding himself out as the father (see Matter of Isabella TT. [Dalton C.], 127 AD3d 1330, 1332-1333 [3d Dept 2015], lv denied 25 NY3d 913 [2015]).
Where, as here, there is a basis in the record to support a court's determination whether a father's consent is required, we will not disturb that determination (see Matter of Ashton, 254 AD2d 773, 773 [4th Dept 1998], lv denied 92 NY2d 817 [1998]; see also Matthew D., 31 AD3d at 1104; see generally Raquel Marie X., 76 NY2d at 408-409). We have reviewed petitioners' remaining contentions in these consolidated appeals and conclude that none warrants modification or reversal of any of the orders.
All concur except Smith, J.P., who dissents and votes to reverse in accordance with the following memorandum: I respectfully dissent because I disagree with the majority that respondent-petitioner Douglas W.M. (father) was a consent father within the meaning of Domestic Relations Law § 111 (1) (e). To the contrary, I would reverse in all three appeals, make a finding in appeal No. 1 that the father was a notice father whose consent to the adoption of the child was not required under section 111 (1) (d), and dismiss the petitions in appeal Nos. 2 and 3 (see generally Matter of Kevin W. v Monique T., 38 AD3d 672, 673 [2d Dept 2007], lv denied 9 NY3d 803 [2007]). In the seminal case on this issue, the Court of Appeals stated that a consent father, i.e., "an unwed father who has been physically unable to have a full custodial relationship with his newborn child[,] is . . . entitled to the maximum protection of his relationship, so long as he promptly avails himself of all the possible mechanisms for forming a legal and emotional bond with his child" (Matter of Raquel Marie X., 76 NY2d 387, 402 [1990], cert denied 498 US 984 [1990]; see Matter of Robert O. v Russell K., 80 NY2d 254, 263-264 [1992]). In order to be entitled to such protection, however, a father " 'not only must assert his interest promptly (bearing in mind the child's need for early permanence and stability) but also must manifest his ability and willingness to assume custody' during the six months prior to the child's placement" for adoption (Matter of Seasia D., 10 NY3d 879, 880 [2008], rearg denied 11 NY3d 752 [2008], cert denied 555 US 1046 [2008]; see Matter of Lily R., 283 AD2d 901, 903 [4th Dept 2001], lv dismissed 96 NY2d 936 [2001]). Therefore, the father was required to demonstrate both his willingness and his ability to assume custody of the child (see e.g. Matter of Isabella TT. [Dalton C.], 127 AD3d 1330, 1333 [3d Dept 2015], lv denied 25 NY3d 913 [2015]; cf. Matter of Russell R. v Friends In Adoption, Inc., 64 AD3d 912, 913 [3d Dept 2009], lv denied 13 NY3d 710 [2009]).
Here, I agree with the majority that the father established his willingness to assume custody of the child, and that the mother frustrated his attempts to obtain custody. Nevertheless, I disagree with the majority's conclusion that the father established his ability to do so. To the contrary, the father, who was honorably serving in the United States Army, took no steps to put himself in a position to provide care for the child. During the pertinent time period, the father initially lived in an army barracks and then was deployed to an overseas active zone, and indeed he testified by telephone on two occasions, first from an overseas deployment and thereafter from a temporary assignment in the State of Texas. There is no indication in the record that he made any attempt to obtain military housing that would permit him to provide care for the child, tried to place the child on his health insurance plan, paid more than inconsequential parts of the [*3]mother's birth and pregnancy expenses, or obtained any food, clothing or accessories necessary to care for a child. His only plan for providing care for the child, which was not set forth until the time of the hearing, well outside the "the six months prior to the child's placement" (Seasia D., 10 NY3d at 880; see Raquel Marie X., 76 NY2d at 402; Matter of Baby Boy O. [Robert—Kyle S.M.], 181 AD3d 606, 606-607 [2d Dept 2020]), was merely a nebulous indication that his girlfriend or his father could care for the child until he was able to assume custody. Of course, his commendable military service and housing is no obstacle to obtaining custody, but the father was nonetheless required to show that he could care for the child, or demonstrate that he was able to obtain such care, and I conclude that he failed to do so. Thus, I conclude that Family Court erred in concluding that the child should be taken from the only home he has ever known, and where he remains to this day pursuant to the stay pending the determination of these appeals that was issued by this Court.
Entered: June 10, 2022
Ann Dillon Flynn
Clerk of the Court